---

### MEYERS v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. November 20, 1896.)

STREET RAILROADS—REFUSAL TO GIVE TRANSFER—ACTION FOR PENALTY.

The penalty for refusal to give a transfer to "any passenger desiring to make one continuous trip" between any two points on a street-railroad system (Laws 1892, c. 676, § 104) cannot be recovered by one who demanded a transfer with the sole object of recovering for refusal.

Appeal from trial term, Kings county.

Action by George C. Meyers. From a judgment entered on a verdict directed by the court in favor of plaintiff, and from an

order denying a motion for a new trial, defendant appeals. Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Charles A. Collin, for appellant.
Daniel Cameron, for respondent.

BROWN, P. J. The complaint in this action sets forth 10 separate causes of action, by each of which the plaintiff seeks to recover a penalty of $50 for the defendant's refusal to furnish him a transfer between different lines of its street-surface railroads in the city of Brooklyn, in alleged violation of section 104 of the railroad law (chapter 565, Laws 1890, as amended by chapter 676, Laws 1892). Upon the trial each party moved, at the close of the testimony, that the court direct a verdict in its favor, and after argument a verdict was directed in favor of the plaintiff for $500. A motion for a new trial having been made and denied, the defendant appealed to this court.

The facts of the case are undisputed. On February 14, 1893, the Brooklyn City Railroad Company leased to the defendant for the term of 999 years certain street-surface railroads in the city of Brooklyn. Among the roads so leased was that known as the "Fulton Street Line," which, beginning at the Fulton Ferry, ran along Fulton street to Alabama avenue, and thence to Atlantic avenue. Also the road which ran along Tompkins avenue to Fulton street, and thence along Fulton street to Nostrand avenue, and known as the "Tompkins Avenue Line." On September 3, 1894, the plaintiff boarded a car of the Tompkins Avenue Line on Fulton street, and, having paid his fare of five cents, he rode to the intersection of Nostrand avenue and Fulton street, and there demanded of the conductor a transfer ticket to enable him to take a Fulton street car, and, without further charge, ride further down Fulton street, which demand was refused. On the same day, on nine other occasions, the plaintiff rode upon a Fulton street car to Tompkins avenue, in each case paying his fare of five cents, and there demanded of the conductor of the car a transfer ticket to enable him without further charge to ride upon the Tompkins avenue car, which demand was in each case refused. It is the plaintiff's claim that by such refusals the defendant incurred the penalties sued for and recovered in this action. The section of the railroad law which it is claimed supports this action is as follows:

"Every such corporation entering into such contract shall carry or permit any other party thereto to carry between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between such points for one single fare, not higher than the fare lawfully chargeable by either of such corporations for an adult passenger. Every such corporation shall upon demand, and without extra charge, give to each passenger paying one single fare a transfer, entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract, to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare. For every refusal to comply with the requirements of this section the corporation so

refusing shall forfeit fifty dollars to the aggrieved party. The provisions of this section shall only apply to railroads wholly within the limits of any one incorporated city or village."

The learned counsel for the appellant contends (1) that the words, "every such corporation entering into such contract," do not apply to the lease of the Brooklyn City Railroad Company; and (2) that, if it be held to have such application, the last sentence exempts from the operation of the section all portions of the leased railroad, because the road so leased is not wholly within the city of Brooklyn. We deem it unnecessary to decide these questions at this time, for the reason that we are of the opinion that, assuming that the section of the statute is applicable to the defendant, the plaintiff failed to show that he had been denied any legal right which the statute gave him. The command of the statute is that the corporation shall carry for a single fare, between any two points on its road, "any passenger desiring to make one continuous trip between such points," and the plaintiff's whole case must rest upon the proof of his allegation that upon each of the occasions when he was refused a transfer ticket he desired to make a continuous trip from the point where he first boarded the car to a point on the line to which he demanded to be transferred. Unless he has established that fact, he is not within the protection of the statute, and no penalty has been incurred by defendant by refusing his demand. That he did not desire to make a continuous trip between two points on the connecting lines is too plain for argument. His whole purpose was not to be transferred at the point where he made his demand. He knew that the demand would be refused, and he had, when he boarded the car, no intention to proceed beyond the point where the two lines connected, and no desire to go beyond that point. His whole purpose was fulfilled when he reached the place where he could conveniently have his demand for a transfer ticket refused. Upon this point the plaintiff gave the following testimony:

"The Court: Now prove that he was riding to test the company on those points. The Witness: That is what I was riding for. Q. by Mr. Whitehouse: Did you start out for that purpose? A. Yes, sir; I started out on that purpose. Q. When you started out to take the car from Myrtle avenue and Tompkins, you had no particular point in Brooklyn that you desired to go to? A. I felt like taking a ride. Q. Do you mean that you felt like taking a ride, or felt like trying to test that? A. I felt like taking a ride that evening, and I thought I would test it that same time. Q. Was this at night? A. Yes, sir. Q. Where did you feel like taking a ride to? A. Just on those two roads. Q. You had no particular point on any one of those railroads where you desired to go, did you? A. No, sir. The Court: That subject is exhausted. He says he was there to test this question; that is all."

The purpose intended to be accomplished by the section of the statute upon which this action is based was a public one. It is expressed in the words of the act to be "that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare." While the penalty prescribed for the violation of the legislative command is permitted to be enforced in an action brought in the name of a passenger, no public good would be ac-

complished by permitting it to be used as an instrument for the mere personal benefit of an informer. Statutes of this character have in many cases received judicial construction, and in all to which our attention has been directed the courts have distinctly disavowed the construction that rests upon a right to sue for penalties for individual benefit and profit, but have always given full effect to the public character of the law. This is notably so in all cases where the question presented has been whether a plaintiff was to be limited in his recovery to one penalty, or whether he would be permitted to accumulate a large number of penalties, and bring one action to recover the whole mass. The case of Fisher v. Railroad Co., 46 N. Y. 644, is the only authority cited by the respondent to sustain his recovery. The statute upon which that case rested was materially different from the section of the railroad law now under consideration. It was that "any railroad company which shall ask and receive a greater rate of fare than that allowed by law shall forfeit fifty dollars, which sum may be recovered together with the excess so received by the party paying the same." It will be observed that that statute does not contain the word "passenger." The application of the present statute is not only limited to a passenger, but to one desiring to make a continuous trip between points on the connecting lines. This limitation precludes one from suing for a penalty who, having no intent to travel between two such points, merely rides to the transfer point, and there makes it his occupation to demand transfer tickets, for the purpose of suing the company for his own private gain. To call such a person a "passenger" desiring to make a continuous trip between two points on the connecting lines would be to defeat the true purpose and intent of the statute.

The judgment and order must be reversed, and a new trial granted, with costs to abide the event. All concur.