right hub and the nearest point approached thereto by any part of the car. There was no dispute as to these measurements and distances. It further appeared from the plaintiff's testimony that when he stopped the horse the car was just beginning to make the curve, a distance from him of about 35 feet. The car was 30 feet long, so that the rear end thereof which collided with the wagon was about 65 feet distant when plaintiff stopped. The car did not strike the wheel, but the step attached to the shaft, which from the evidence did not project out as far as the wheel. How much the difference in this projection was does not appear, but it is evident that the plaintiff could have driven more than 15 inches nearer the curb; how much more would depend on the extent to which the outside of the right hub projected beyond the step which was struck by the car. It was a bright day. The horse was perfectly manageable. The evidence is that it was standing parallel with the sidewalk at the time of the collision. It is quite clear that, had the plaintiff guided the horse to the left, and driven closer to the curb, as he might have done, especially as he was seated at the left side of the wagon, the accident would not have happened. When he stopped opposite the signpost, the rear end of the car was then 65 feet distant, and he had ample opportunity to turn to the left for a space of more than 15 inches, and avoid the accident. He knew that the rear end of the car would swing around, and gives that as his reason for stopping. Instead of using the means at his disposal to avoid the accident which ordinary prudence should have suggested, he did nothing. In Matulewicz v. Metropolitan Street Railway Company, 107 App. Div. 230, 95 N. Y. Supp. 7, the plaintiff was injured by the rear end of a car as it swung around a curve, and the court held him negligent in not observing the simple and obvious precaution of stepping back. The plaintiff in that case, it is true, was a pedestrian, but that circumstance does not distinguish the case in principle from this case. Here the plaintiff had time, space, and opportunity to turn to the left and avoid the accident, and his failure to observe this simple and obvious precaution requires a reversal of this judgment.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except SMITH, J., who dissents.

---

FITZMARTIN v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term. June 20, 1906.)

CARRIERS—PASSENGERS—TRANSFERS—PENALTY—MOTIVE.

A street car passenger, desiring to make a trip to a point within the city, located on a car line controlled by the same company, demanded and was refused a transfer to the intersecting line, to which she was entitled under Railroad Law, Laws 1890, p. 1114, c. 565, § 104, as amended by Laws 1892, p. 1406, c. 676, providing also, to the end that the public convenience might be promoted, a forfeiture of $50 to one aggrieved by a refusal of such transfer. The passenger continued her journey on the intersecting line, paying the additional fare and making purchases at her destination. *Held*, that the statute being punitive, rather than compensatory, it was immaterial to the company's liability for the penalty

that the passenger knew she would not receive the transfer, or that one of the objects of the trip was to recover such penalty, or that she had many other similar suits pending.

Appeal from Municipal Court, Borough of Manhattan, Tenth District.

Action by Theresa Fitzmartin against the New York City Railway Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before GILDERSLEEVE, LEVENTRITT, and McCALL, JJ.

James L. Quackenbush (Frank D. Wynn, of counsel), for appellant. E. V. R. Ketchum, for respondent.

McCALL, J.   The complaint in this litigation sets forth a cause of action under which the plaintiff seeks to recover a penalty of $50 for the defendant's refusal, upon plaintiff's demand, to give her a transfer ticket from the car upon which she was riding and had paid her fare to another car running upon an intersecting line owned, operated, and managed by the defendant, which transfer would vouchsafe her a continuous ride for one fare from the point of the beginning of her journey to that of her destination.   Upon the trial of the action the plaintiff testified that on the morning of July 4, 1905, she boarded the defendant's car at the corner of Sixth avenue and Thirty-Fourth street, which was bound west along said Thirty-Fourth street, and that her point of destination was a drug store situate at the corner of Tenth avenue and Twenty-Third street; that she paid her fare and asked for a transfer to the Tenth Avenue Belt Line going south; that the conductor refused to comply with her request, and she did not receive a transfer.   On arriving at Tenth avenue she alighted from the car on which she began her journey, and from which a transfer had been refused, and boarded another car on the Tenth Avenue line going south, and paid a second fare of five cents and continued to ride until the corner upon which the drug store was located had been reached, when she alighted, repaired thereto, and made some purchase.   This testimony stands practically uncontradicted and is more or less corroborated by a friend who accompanied plaintiff and who was called by her as a witness on the trial.   By its answer the defendant admits that, at the time the transfer was refused, it controlled, operated, and managed both of the intersecting lines which were wholly within the limits of the city of New York.

Under such a state of facts, there is an unequivocal and plainly defined statutory obligation imposed upon the defendant to issue a transfer, and, if through its servants or employés it refuses at any time a demand made by a passenger so to do, it must answer in the amount of the penalty provided for.   Section 104, Railroad Law (Laws 1890, p. 1114, c. 565, as amended by Laws 1892, p. 1406, c. 676).   In the case at bar, it is sought to avoid the infliction of the penalty by trying to demonstrate that the motive that prompted the plaintiff to take this journey was the sole one of riding to a point where she knew she would be refused a transfer, and, upon such a refusal being had, to precipitate a litigation to recover $50; and, if such fact be established by

proof, it is then claimed the courts must conclude that they work a condition not contemplated by, and hence without the pale and protection of the statute, and therefore prohibits the invocation of its office to effect a recovery, and to this end Myers v. Brooklyn Heights R. R. Co., 10 App. Div. 335, 41 N. Y. Supp. 798, is urged upon the court as controlling. With such a contention, based upon the facts in this case, we cannot agree, and in so concluding we do not feel that we are placing ourselves in a position hostile to the conclusion reached, or doctrine pronounced in the Myers Case, but believe it to be clearly distinguishable from the case at bar. In the Myers Case, the plaintiff, after quite an examination, which showed he was wandering aimlessly about with no desire to make a continuous trip, was asked: "You had no particular point on any of those railroads where you desired to go, did you," And answered: "No, sir." And the learned Presiding Justice, in writing for the court, said:

"That he [Myers] did not desire to make a continuous trip between two points on the connecting lines was too plain for argument. * * * And he had, when he boarded the car, no intention to proceed beyond the point where the two lines connected, and no desire to go beyond that point."

If the evidence in the case at bar would warrant such findings or conclusions as these, there would be a speedy reversal of this judgment on this appeal, but the facts in this case are entirely different. It was clearly established that the plaintiff did desire to make a continuous journey from the point she embarked at to a point on the line she sought to be transferred to, and that, though she was refused the transfer, she completed her journey to her point of destination, paying an additional fare to accomplish her trip. It matters not that the plaintiff may have said during her examination on the trial of the issues, and we may even accept it as having been established as a fact, that one of her reasons in taking the ride was to "enforce justice" by collecting the penalty, or that she knew she would be refused a transfer, or that she had other and many similar actions pending, if she is within the statute a passenger, having paid her fare and desiring to make a continuous ride from a given point on one line to a destination that marks a point on another line intersecting with the first, and both wholly within the limits of any one incorporated village or city and controlled, operated, and managed by the same corporation. She was entitled to a transfer on demand at any time before the transfer point was reached. It may well be, if defendant persists in refusing these transfers, that some people, either of their own thought or prompted thereto by others, will frame journeys. Where the motive and faith may be very questionable, and the result may lead to multiplicity of suits, and courts would well like to make other dispositions of such cases, where their plain duty compels; but the answer to all this is that the defendant has a quick and efficacious remedy in its own hands to apply, and that is to perform the unquestioned duty that the statute exacts, to wit, the giving of the transfers asked. The statute was evidently enacted, not for the purpose of compensating the passengers for any damage wrought in the refusal to transfer, but rather to inflict a punishment for violation of its terms in order to compel respect for the mandates of the lawmaking power, and cause it to prove a burdensome experi-

ence to indulge in persistent and unjustifiable disregard of its commands. Therefore the question of motive or faith of the passenger is not available as a defense. Fisher v. N. Y. C. & H. R. R. Co., 46 N. Y. 644. Of course this reasoning and conclusion is based upon the condition of facts revealed by the record in this case, which in our judgment clearly presents a situation where the right to a transfer was vested in the passenger by the express terms of the statute, a right which the defendant by its refusal violated.

Judgment affirmed, with costs. All concur.