CARRIERS—CARRIAGE OF PASSENGERS—TRANSFERS—DEMAND.

    Where, at the time a passenger gave his transfer to the conductor, he held out his hand to receive another, but the conductor muttered something, not heard by the passenger, and passed on through the car, and, on his return, the passenger orally demanded a transfer, which was refused, there was a sufficient compliance with the rule of the company requiring passengers to demand transfers at the time of payment of fare.

Appeal from Municipal Court, Borough of Brooklyn, First District.

Action by Patrick Sullivan against the Brooklyn Heights Railroad Company for failure to give a transfer. At the time plaintiff gave his transfer to the conductor, he held out his hand to receive another. The conductor muttered something, not heard by plaintiff, and passed on through the car; but, on his return, plaintiff orally demanded a transfer, which was refused. The defense was that plaintiff had not complied with defendant's rule, requiring passengers to demand transfers at the time of payment of fare, which rule was posted in the car. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

A. M. Williams, for appellant.

Henry Morris Haviland, for respondent.

WOODWARD, J. This case, as finally submitted to the Trial Court, presented a question of fact as to whether or not the passenger by adequate word or sign requested a transfer from the conductor at the time he paid his fare. This question was decided in favor of the plaintiff. I am of opinion that the decision upon the facts was justified by the evidence.

This being so, the question of law presented in behalf of the appellant as to the reasonableness of the rule requiring the request for the transfer to be made at the time of paying the fare is not involved in this case.

The judgment of the Municipal Court should therefore be affirmed, with costs. All concur.

---

(121 App. Div. 582.)

### BULL v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, Second Department. October 23, 1907.)

CARRIERS—CARRIAGE OF PASSENGERS—REFUSAL TO GIVE TRANSFERS—PENALTIES.

    Where it is shown that one became a passenger merely to see whether or not the company was giving transfers as provided, and that he had no business beyond the point of transfer, he is not aggrieved, within the meaning of the statute, by the company's refusal to issue him a transfer.

    Gaynor and Woodward, JJ., dissenting.

Appeal from Municipal Court, Borough of Richmond, Second District.

Action for penalty by Harcourt Bull against the New York City Railway Company. From a judgment for plaintiff, defendant appealed. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and GAYNOR, JJ.

James L. Quackenbush (Henry F. Gannon, on the brief), for appellant.

Harcourt Bull, pro se.

HOOKER, J. This is an appeal by the defendant from a judgment of the Municipal Court for the penalty for the refusal to issue a transfer. On cross-examination the plaintiff testified that he rode to the transfer point "with the sole object of simply traveling over the line to see what would be done," and:

"Q. If you had received a transfer, you had no business beyond the point at which your transfer was honored? A. I had obtained the information I was after."

It is obvious that the plaintiff was not "aggrieved," as the term is used in the statute. The judgment should be reversed, on the authority of Nicholson v. New York City Railway Company, 118 App. Div. 858, 103 N. Y. S. 695.

Judgment reversed, and new trial ordered; costs to abide event.

HIRSCHBERG, P. J., concurs. JENKS, J., concurs, on the authority of Myers v. Brooklyn Heights R. Co., 10 App. Div. 335, 41 N. Y. Supp. 798.

GAYNOR, J. (dissenting). It is claimed that the plaintiff cannot recover because he was traveling between the two points for the purpose of seeing if the defendant complied with the statute by carrying passengers for one fare and giving them transfer tickets, and with intention to sue for the penalty if it did not. We have a controlling decision of our highest court to the contrary. Fisher v. N. Y. C. & H. R. R. Co., 46 N. Y. 644. It was there held that the fact that the plaintiff was a passenger only for the purpose of paying the excessive fare which the company was charging, and then suing it for the penalty, was no defense to the action. And that decision is just as applicable, in all just reason, and apart from quibbling, to section 104 (Laws 1890, p. 1115, c. 565) as it is to section 39, which embodies the statute construed by it. The opinion in Nicholson v. N. Y. City Railway Co., 118 App. Div. 858, 103 N. Y. S. 695, makes a distinction. It is there said that while section 104 applies to a "passenger" in terms, section 39 does not. "Not a word" (says the opinion there) "is said in that statute" (section 39) "about a passenger, but it is the party paying the excess of fare who may maintain the action." But who, pray, pays a fare but a passenger? Calling him "party" does not make him any the less a passenger.

And it is said that section 104 by passenger means a passenger in good faith, and in terms refers to a "party aggrieved," and that one who rides over a railroad company's lines to see if it obeys the law as to fare and transfers is not a passenger in good faith, or a "party ag-

grieved" if refused a transfer or charged a second fare. That is exactly the claim that was repudiated in the Fisher Case. "The forfeiture is imposed on the company for its act, and this entirely irrespective of the object or motive of the passenger in travelling," said the Court of Appeals. In the present case "the forfeiture is imposed on the company for its act" of refusing a transfer, and charging another fare, "and this entirely, irrespective of the object or motive of the passenger in travelling." And it is to be noted that the Court of Appeals calls the plaintiff a "passenger," and not a "party," and makes no fine distinction between the two words. Indeed, both sections call the person overcharged or refused a transfer a "party," so that there is in fact no difference of terminology to base an argument on.

Is it to be held by the courts that it is not legitimate, orderly, and proper business for a member of the community to ride over a railroad route to see that the company is complying with its duty to the public, and with the intention of suing it for a penalty to compel it to do so? For many years the street railroad companies throughout the city of New York refused to carry passengers for a single fare, and give transfers therefor as required by law, as recent decisions of our courts fully attest. Those who finally came forward and made it their business to take note of such violations, and sue the companies for penalties therefor, and thereby compelled them to do their duty, did a much needed and righteous public service. They received in return the gratitude and good will of the community, and should not receive the reproach of the courts. The position that a citizen who becomes a passenger to ride about the city to see that the duty the company owes by law to the community is being fulfilled, is not a passenger in good faith, or not to be deemed a passenger at all, is an incredible one for the courts to take. The case of Myers v. Brooklyn Heights, 10 App. Div. 335, 41 N. Y. Supp. 798, is plainly distinguishable from the present case, in that there the passenger did not continue on his trip after the refusal of the transfer and pay the extra fare, while here the plaintiff did. But I do not think we should admit of such a distinction. He might have continued if he had got the transfer ticket which was illegally refused to him. And, really, how can it be said that one refused a transfer ticket forfeits his right to the penalty by not continuing on his journey, or by walking the rest of the way? Moreover, the plaintiff there was not refused because he was out seeking for violations; the company knew nothing of his motives or object. The act of the company in refusing the transfer incurred the penalty without regard to his motives or object. It is time that the whole matter be set right; and it is for us to follow the decision of the highest court in the Fisher Case, and not decisions which have set it at naught. The contrary is to set aside a plain statute.

WOODWARD, J., concurs.