[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 646 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 647 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 648 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 649 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 651 
In 1852, the Buffalo and Lockport Railroad Company became a corporation under the provisions of the general railroad law, for the purpose of constructing and operating a railroad for the transportation of persons and property between these places, which road should pass through the village of Tonawanda, a place situate ten and a-half miles north of Buffalo.
The corporation commenced the construction of its road, and had completed the same from Lockport to Tonawanda, and under a contract with the Buffalo and Niagara Falls Railroad Company, was engaged in the construction of a track for its use between Tonawanda and Buffalo, on the 7th of July, 1853, when it became consolidated with certain other companies, pursuant to the act of April 2d 1853, into a new corporation, under the name of the New York Central Railroad Company. At the time of this consolidation, and for some time previous thereto, the Buffalo and Niagara Falls *Page 652 
company were operating a railroad between the city of Buffalo and the village of Tonawanda, the latter being a station on its road from Buffalo to Niagara Falls. After the consolidation, the New York Central Company completed the track from Tonawanda to Buffalo, over which it ran trains from Lockport to Buffalo. These facts show clearly that that part of the road between Tonawanda and Buffalo was subject to the seventh section of the consolidation act, which provides that when two or more of the railroad companies named in the act become consolidated under its provisions, said consolidated company shall carry way passengers on its road at a rate not exceeding two cents per mile, unless relieved therefrom by the facts hereafter stated:
On the 7th of June, 1852, the Buffalo and Lockport, and the Buffalo and Niagara Falls companies entered into an agreement, by which the right of way on the line adopted by the Buffalo and Lockport company (substantially between Tonawanda and Buffalo) was to be procured at the joint expense of both companies, to be held and enjoyed by both companies jointly, for their joint and separate business, and that the grading, masonry and bridges were to be constructed at the joint expense of both companies, such grading, etc., to be of sufficient width for two tracks, said companies each to pay for itself the expense of the superstruction of one track. This plainly contemplated that while the right of way was to be acquired at the joint expense of both companies, and the expense of grading, etc., paid in like manner, yet each company was to lay its own track thereon at its own expense, if it chose to avail itself of its right so to do. The Buffalo and Niagara Falls Company never laid any track upon the line acquired under this agreement. On the 23d day of December, 1853, the New York Central Company entered into an agreement with the Buffalo and Niagara Falls Company by which (if valid) the former acquired from the latter the right to use the road and property connected therewith, and its franchises during the existence of the latter corporation. The validity of this contract is claimed by virtue *Page 653 
of the act authorizing railroad companies to contract with each other. (Laws of 1839, 195.) That act contains but a single section, providing that it shall be lawful hereafter, for any railroad corporation to contract with any other railroad corporation, for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contract, but that nothing in the act contained shall authorize the road of any railroad corporation to be used in a manner inconsistent with the provisions of the charter of the corporation, whose railroad is to be used under such contract. I think the contract made was within the powers conferred by this act, and therefore valid, and that under this contract the Central Company, acquired the right to run cars upon the road theretofore in use by the Niagara Falls Company, under the franchise of the latter company, which authorizes a charge of four cents a mile for transporting passengers, irrespective of the question whether such passengers were way or through, but the plaintiff was not carried upon any such road, but upon the track constructed by the Buffalo and Lockport Company, or its successor, the New York Central. In 1855, an act was passed (Laws of 1855, 517), providing that any railroad corporation then being the lessee of the road of any other railroad corporation, might acquire the stock of such corporation in the manner therein provided, and that when it had so acquired the majority of such stock, its directors might, by resolution, to be entered on their minutes, become ex officio, the directors of the corporation whose road was held under lease, and further providing, that when the whole stock had been so acquired, the estate property, rights, privileges, and franchises of the said corporation, whose stock had been thus acquired, should thereupon vest in, and be held, and enjoyed by the corporation so acquiring such stock, as fully and entirely, and without change or diminution, as the same were before held and enjoyed, and be managed and controlled by the board of directors of the said corporation which has so acquired such stock, and in the corporate name of such corporation. There *Page 654 
can be no doubt but that the New York Central was the lessee of the Buffalo and Niagara Falls road, within the meaning of this statute. The case shows that the New York Central company, after the passage of this act, and before April 23d 1869, acquired in the manner therein provided, all the stock of the Buffalo and Niagara Falls Railroad Company, and on that day filed the requisite certificate in the office of the Secretary of State, and thereby become invested with all the property and franchises of that company. From these facts the defendant claims the right to charge for the carriage of passengers between Buffalo and Tonawanda four cents per mile. If right in this, the judgment for the plaintiff should be wholly reversed, as the sum charged the plaintiff was less than this amount. The argument of the defendant is this: The Buffalo and Niagara Falls Railroad Company had the franchise of carrying persons by rail from Buffalo to Tonawanda, and to charge and receive therefor four cents per mile. That by compliance with the provisions of the act of 1855, it has acquired all the franchises of that company, in as full and ample a manner as such franchises were enjoyed by it. That, therefore, the defendant has the right to carry passengers by rail between those points, and charge the like sum per mile therefor. It is this view that induced the defendant upon the evidence of its counsel to fix the fare between those points at a greater rate than two cents per mile. But this entirely overlooks the fact, that the Buffalo and Niagara Falls Company never had the right to transport passengers upon the track of the defendant, and charge therefor more than two cents per mile, and never could have acquired any such right. The act of 1839 expressly prohibits the lessee of any railroad from exercising any franchise, upon the road leased, inconsistent with the charter of the lessor. Had the Buffalo and Niagara Falls road leased from the New York Central its road between Tonawanda and Buffalo, and the franchise connected therewith, it would have been obliged to carry passengers thereon for two cents per mile, for the reason that *Page 655 
a greater charge would have been inconsistent with the charter of the New York Central.
It is upon this track the plaintiff was carried by the defendant. Upon this track the defendant was, before and at the time it acquired the property and franchises of the Buffalo and Niagara Falls Railroad Company, obliged to carry passengers for two cents a mile. It was not relieved from its obligation so to carry them, by acquiring the franchise of the Buffalo and Niagara Falls Company to carry upon another track between the same points, and charge therefor a higher rate per mile. Whether there is, or has been since the removal of the old Buffalo and Niagara Falls road by the defendant, any track in existence between Buffalo and Tonawanda, upon which the defendant can charge more than two cents per mile, although the passenger may be going to Niagara Falls as held by the General Term, is a question of grave doubt, but one not necessary to decide in the present case. It follows that the plaintiff was entitled to judgment under the act to prevent extortion by railroad companies. (Laws of 1857, 432.) That act (section 1) provides, that any railroad company which shall ask and receive a greater rate of fare than that allowed by law, shall forfeit fifty dollars, which sum may be recovered, together with the excess so received, by the party paying the same; but that it shall be lawful, and not construed as extortion, for any railroad company, to take the legal rate of fare for one mile for any fractional distance less than a mile. The defendant insists that but one penalty can be recovered in the action. First, for the reason, that by the fair construction of the act, no person can acquire a right to recover more, for any and all violations previous to the commencement of the action. Second, that but one penalty can be recovered in an action, in the absence of a statute conferring the right to recover more.
It is clear that the excess exacted, if not voluntarily paid, could be recovered without the statute. That provides, also, for its recovery, and, doubtless, the whole amount of excess, paid by any person to the company within the period fixed *Page 656 
by the statute of limitations, may be recovered in one action. The question arises upon the fifty dollars, which the statute provides that the company shall forfeit by asking and receiving a greater rate of fare that that allowed by law, which sum may be recovered, together with the excess so received, by the party paying the same. How recovered? The law answers, by suit in any court having jurisdiction. What may be recovered? The statute answers, the fifty dollars forfeited, which sum, together with the excess paid. It is clear that the letter of the statute authorizes the recovery of nothing more.
The counsel for the respondent insists that, as soon as the excess of fare was charged and received, the right of action, by the person paying it, for its recovery, and also of the sum of fifty dollars, forfeited, was perfect.
In this the counsel is correct. He further insists that it follows, that a repetition of the act by the defendant, gives him an additional right of the same character; but that is quite a different question, which must be determined by the construction of the statute. In this connection the counsel cites Palmer v.Conly (4 Denio, 374). That was an action against several persons, to recover the penalty given by section 17, 2 Revised Statutes, p. 503, for knowingly assisting the plaintiff's tenant to remove his goods from the demised premises, having rent due thereon, for the purpose of avoiding the payment of the rent; and the question was, whether the statute abolishing distress for rent, passed during the pendency of the action, was a bar to its further prosecution. Held, that it was not, for the plain reason that the statute abolishing distress for rent, although rendering the section, giving the penalty, inoperative for the future, because no case could occur rendering its violation possible, yet it did not repeal the section. It is from the opinion in this case, and of that of the learned judge when the same case was before this court upon appeal (2 Comst., 182), that the counsel cites, to show that the right to the penalty was one vested in the plaintiff. That this is not true, in the sense insisted upon by the counsel, is shown *Page 657 
by the fact that the right would be destroyed by a repeal of the statute giving the penalty, as is shown by note b of the reporter, at page 377. A further question arose, which was, whether, several persons having been concerned in the removal, a several penalty had been incurred by each, or a single penalty, which might be recovered severally against any one or against all jointly. The court held that but a single penalty had been incurred, although the language of the statute was "every person," etc., apparently making each liable to a several penalty, upon the ground that such was the apparent intent, for the reasons that the offence was single, and given to the plaintiff in satisfaction of the injury received by him. It is insisted by the counsel that this forfeiture is given to the party as a satisfaction for the injury received. But that injury is fully satisfied, in judgment of law, by returning to the party the sum extorted, with interest thereon. That is the satisfaction given for such an injury by the common-law, in the absence of any statute; and when, in such cases, punitory damages, sometimes called smart-money, are given, it is not to compensate the plaintiff for his injury, but to punish the defendant for his misconduct. A little reflection will show, I think, what the forfeiture was given for. Until 1855, so far as I am aware, no statute had been passed upon this subject. Experience had shown that railroad corporations were charging fares beyond the rate allowed by law; that these charges were very small in each particular case, but, aggregated for a year, amounted to a sum sufficient to continue the practice. The sums so extorted were always small in any one case, usually but a few cents, sometimes shillings, and the trouble and expense of prosecuting for their recovery in justices' courts were more than the amount received from any one person. Thus the illegal practice was continued with impunity.
To remedy this, the statute was passed giving the fifty dollars to the party paying the money, not as a satisfaction for the injury received, for that was otherwise compensated; but to enable him to prosecute in a court of record, when *Page 658 
he could recover the compensation of his attorney as costs, and to compensate for any further expense that might be incurred in the suit, and to compel the payment of such a sum by the defendant as would effectually stop the practice. To effectuate this intent, the language of the statute was chosen with care; which sum, etc., may be recovered, omiting the words, "for each and every offence," found in various penal statutes, showing clearly that the legislature did not intend to open a door to a practice adopted in a case originating in another part of the State, now under advisement in this court, of opening a book account of penalties earned, and delaying suit for a year, when such penalties amounted to between $20,000 and $30,000. A construction permitting this would defeat the intention of the legislature, which was to suppress the extortion by prompt prosecutions, by enabling parties to forbear suing until the aggregate of penalties amounted to a large sum, and induce others to do as one of the plaintiffs in one of the cases now in judgment was honest enough to testify he did; that was to abandon other business and spend his time for a considerable period in riding back and forth from Tonawanda to Buffalo for the purpose of earning penalties. This answers the suggestion of counsel, that if but one penalty can be recovered in this case, a party can be convicted but of one crime, though guilty of several, by showing from the language used, construed in the light of the facts known to the legislature, that it was the design of the statute, that but one forfeiture should be recovered for all acts committed prior to the commencement of the action. The counsel cites Deyo v. Rood (3 Hill, 527), which was an action for the recovery of penalties incurred by violations of the excise act, by selling strong or spirituous liquors without a license. The language of the statute is, whoever shall sell strong or spirituous liquors, etc., without having a license, etc., shall forfeit twenty-five dollars. Held, that a penalty was incurred by each sale, and that all incurred might be recovered in one suit; but a subsequent section of the same act provided, that the penalties given by the act *Page 659 
might be recovered by the overseers of the poor; thus showing that the legislature designed to impose a penalty and provide for its recovery for every offence. See Washburn v. McInroy (7 J.R., 134), where it was held, in a similar action, that under the statute, as then in force, but one penalty could be recovered, for the reason that from the entire act such appeared to be the intention of the law maker. These cases, and Bones v.Booth (2 Wm. Blackstone, 1226), Ward v. Snell (1 H. Blackstone, 10), and other cases and authorities cited by counsel, show that the statute in question is to be fairly construed, whether regarded as penal, or remedial so as to carry into effect the intention of the makers, apparent from the language used. (See, also, Chapman v. Chapman, 1 Root, 52;Barber v. Eno, 2 Root, 150; Garett v. Messenger, 2 Law Reports, Eng. Com. Pleas, 583; Tiffany v. Driggs, 13 J.R., 253; Sturgess v. Spoffard, decided by this court, not reported.)
My conclusion is, that but one penalty can be recovered upon the statute under consideration, for all acts committed prior to the commencement of the action. If, after this, it is again violated, another may be recovered in another action commenced thereafter, and so on, as long as violations continue. This will not only tend to put a stop at once to the extortion, when it is committed knowingly by the defendant, but where it is done under a mistake as to its rights, will give it notice that its right to charge the amount claimed is challenged, and will induce a cautious examination of the question, and an abandonment of the claim before a ruinous amount of penalties have been incurred. The idea that a liability to a penalty of fifty dollars with costs of suit will be insufficient to restrain railroad corporations, is too evidently groundless to require consideration; but even if sound, the legislature, and not the courts, must apply the remedy. This makes it unnecessary to determine, whether if several penalties are recoverable, they can all be recovered in one action, or whether a separate action must be brought for each penalty. I dismiss this part of the case with the simple remark *Page 660 
that irrespective of what was the early common-law rule, or how the question as an original one should be determined upon principle, the rule has been too long considered, settled and acted upon in this State, that they can all be recovered in one action, to permit any departure from it by this court. A point was made by the counsel for the appellant, that a recovery could not be had by a party who paid the excessive fare, when riding for the purpose of obtaining a penalty. In this I cannot concur. The forfeiture is imposed upon the company for its act, and this entirely irrespective of the object or motive of the passenger in traveling.
This leads to a modification of all the judgments, by reducing the recovery in each case to one penalty and the excess paid. This makes the question of costs discretionary with the court. While the general rule is, that when it is found that the judgment is materially erroneous to the prejudice of the appellant, for the correction of which he is obliged to come into this court, to charge the respondent with costs of this court, yet I think they should not be so charged in these cases. The character of the litigation leads me to the conclusion that neither party should recover the costs of this court against the other.
Ch. J., ALLEN and FOLGER, JJ., concur.
PECKHAM, J., dissents from so much of the opinion and decision, as allows a party buying tickets for the purpose of suing for a penalty, to recover.
RAPALLO, J., not voting; being interested in the question as counsel.
Judgment accordingly.