O. J. JOLLEY, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

Railroads:  REDEMPTION OF TICKETS:   ENFORCEMENT OF PENALTY: DEMURRER.  Chapter 71, Acts 28th General Assembly, imposes 1 upon a railway company the duty of redeeming unused passenger tickets.  The company may, but is not required to limit the time for redemption, and upon failure to do so a demand for repayment is timely if made within the statutory period of limitations, and in an action to recover for the tickets and enforce the penalty for refusal to redeem, where the time for redemption is not limited, a demurrer to the petition on the ground that demand for repayment was not made within ten days from the date the tickets were sold, should be overruled.

Demand for Redemption: WAIVER. Knowledge on the part of the agent who sells the tickets that the holder is present at his office with the same for the purpose of redemption and he declines to redeem them, the necessity for a formal offer and demand for payment is waived.

Same: WHEN LIABILITY OF COMPANY ATTACHES. Liability of a railway company, under chapter 71, Acts 28th General Assembly, for the price of an unused ticket and penalty is fixed by failure to redeem within ten days after demand for payment, and it is not necessary for the holder to again present the same.

Redemption of Tickets: RECOVERY OF PENALTY. Chapter 71, Acts of the 28th General Assembly, relating to the redemption of unused railway tickets and prescribing a penalty for refusal to redeem, are for the benefit only of such persons as purchase tickets for transportation in good faith, and one who purchases tickets simply for the purpose of having them redeemed, or, in case of refusal to redeem, then to recover the penalty, is not entitled to the penalty.

*Appeal from Calhoun District Court.*—HON. Z. A. CHURCH, Judge.

THURSDAY, FEBRUARY 5, 1903.

THE facts of the case are stated in the opinion. The plaintiff appeals.—*Affirmed* in part.

*J. F. Lavender* and *O. J. Jolley* for appellant.

*J. C. Cook* and *E. C. Stevenson* for appellee.

LADD, J.—The defendant's line of railway, classed by the executive council as "A," runs through Rockwell City, Iowa. The nearest stations on each side are Rands and Jolley. In each of the first three counts of the petition plaintiff alleged the purchase on the 25th day of August, 1900, of one passenger ticket to Rands for seventeen cents; that defendant sold the same without any provision for redemption, stamping on its face, "Good only one day from date of sale;" that he demanded redemption thereof from the office where bought September 15, 1900, which was refused and neglected for ten days. In each of the

sixteen following counts the allegations are substantially the same, except that the tickets were purchased on the 10th and 13th days of September previous to the alleged demand. The defendant demurred to each of the first three counts on the ground that demand had not been made within ten days after the sale. This demurrer was sustained, and, as plaintiff elected to stand on the ruling, said counts were dismissed. Several defenses were interposed to the other counts. The evidence on the part of plaintiff tended to show that eight of the passenger tickets involved in the last sixteen counts were purchased by another for the plaintiff at the maximum rate on the 10th of September, 1900, and the other eight three days later. They were procured without any intention of using them for transportation. The sole object was to enable plaintiff to bring suit against defendant in event of its failure to redeem, and thereby recover a penalty, and reek revenge for some past difficulties. This object was not disclosed to defendant's agent, and, to avoid arousing his suspicion, others were sent for the tickets. September 13th following he called on the agent at the office where the tickets were purchased, and asked him if he redeemed tickets. The agent responded, "Not after two days." Plaintiff then said that he had some tickets, but that they were older than two days. The agent informed him that he could not redeem them, as he had no orders to redeem after two days. The tickets were in an envelope, and were laid on the counter in front of the agent, though not opened. The latter then suggested that plaintiff send them to the passenger agent, and have them redeemed at the central office, whereupon plaintiff took the tickets and walked out. He admitted that he preferred a refusal to redeem, as he wished to commence suit for payment with penalties. Upon this state of facts the court, on motion, directed a verdict for defendant.

The points argued involve the construction of the first three sections of chapter 71 of the Acts of the 28th General Assembly:

"Section 1.    Common Carriers to Redeem Tickets.    It shall be the duty of every railroad company, corporation, person or persons acting as common carriers of passengers in the state of Iowa, to provide for redemption, at the place of purchase and the general passenger agent's office of said carriers, of the whole or integral part of any passenger ticket or tickets that such carrier may have sold as the purchaser or owner has not used for passage or received such transportation for which such ticket should have been surrendered, and said carrier shall there redeem the same at a rate which shall equal the difference between the price paid for the whole and the cost of a ticket between the points for which said ticket had been actually used, and no carrier shall limit the time in which redemption shall be made to less than ten days from date of sale at the place of purchase and six months from date of sale at general passenger agent's office.

"Sec. 2.    Notice Posted.    No railroad company, corporation, person or persons doing business in the state of Iowa, as a common carrier of passengers, whose rate of fare is regulated by the statute of this state, shall sell or issue to any person, at the maximum rate allowed by law, any ticket or tickets bearing condition or limitation as to the time of use, or as to transferability, without first providing for the redemption of said ticket as directed by the preceding section hereof, and also having notice of such provision and privilege of redemption conspicuously posted at each place where sales of tickets are made by common carriers of this state.    A failure to provide for redemption of such ticket or to give notice as above provided shall make all conditions and limitations as to time of use or transferability of no force or effect.

"Sec. 3. Penalty. Any railroad company, corporation, person or persons, who as common carriers shall sell or issue tickets as set forth in the preceding sections, and shall refuse or neglect to redeem the same, as by said section provided within ten days of date of demand, shall forfeit and pay to the owner of such ticket the purchase price of said ticket, and the further sum of $100."

I. It will be observed that no time within which redemption must be demanded is fixed by the statute. The obligation to redeem is created. The duty of providing therefor is imposed on the company. In performing this duty it may, but is not bound to, limit the period within which redemption shall be demanded to net " less than ten days from date of sale at the place of purchase." The company did not choose to so limit the time. This being true, demand was timely if within the period of the general statute of limitations. The statute should receive a fair, though probably strict, construction, as a penalty is provided. But its plain language ought not to be perverted. Without doing so it cannot be said that, in the absence of any provision of the company for redemption, the time for making demand therefor is limited. The demurrer to the first three counts, then, of the petition, ought to have been overruled. Appellee argues that the ruling was without prejudice, on the ground that but one penalty could be recovered in any event. As no penalty is allowed on the other counts, possibly the one referr-d to may be had on the first three. At any rate, the price of the tickets is involved, and to this extent, at least, there was prejudice.

*1. REDEMPTION of tickets: enforcement of penalty; demurrer.*

II. Appellant next insists there was no demand. It clearly appears that the agent knew plaintiff was at the ticket office, with the tickets then in his possession, for the purpose of asking that they be redeemed, and that the agent declined to redeem them. Such a refusal obviated the necessity of a more formal

*2. DEMAND for redemption: waiver.*

offer of the tickets and demand for payment. Having declined to redeem any tickets more than two days old, anything further on plaintiff's part by way of exhibiting the tickets or explaining where they were bought would have been useless. The law exacts from no one an idle ceremony. Plaintiff's secret hope that payment would be refused can make no difference, as it could have had no effect on the company's action.

III.  The production of the tickets in court on the trial indicated that plaintiff still held them, and hence that they had not been taken up by the company. Ap-

*3. SAME: when liability of company attaches.*  pellee argues that ten days after demand plaintiff should have returned to the office for his money. But liability for the price of the ticket and penalty attached upon the mere neglect to redeem within ten days after demand. The company is not bound, as suggested by appellant, to look up the ticket holder in order to pay him. It can do so when afforded the opportunity "at the place of purchase." If in doubt, it is accorded time in which to investigate, but must, at its peril, discharge the statutory obligation, if found to exist, within the period fixed.

IV.  Every one who purchases a passenger ticket impliedly represents that he expects to use it for transportation, and this statute certainly contemplates tickets such

*4. REDEMPTION of tickets: recovery of penalty.*  "as the purchaser or owner has not used for passage, or received transportation for, which such ticket should have been surrendered." Common carriers issue tickets with no other object in view. They are merely to furnish evidence to those in charge of the trains that the price of carriage has been paid, and are never sold as certificates of deposit, or as mediums of exchange. Indeed, companies like defendant, even though they might choose to do so, are without authority to engage in such a business. Mistakes often occur. Frequently, after purchase, the holder is prevented from taking the

journey proposed, or continuing that begun.  Carriers have not always been liberal in adjusting such matters, and the object had by the legislature in enacting this statute was evidently to afford an adequate remedy.  As said by the district court in its opinion delivered when ruling on the motion:  "We cannot assume that the legislature intended to compel railroad companies to issue tickets to parties who intended again to return these tickets and demand their redemption.  This would enable a party after banking hours to go to a railroad ticket office, have his money exchanged for tickets, and compel the railroad company to become custodian of that money over night, and return it to the depositor the next day, thereby not only becoming the guarantor for the safe keeping of the stranger's money, but destroying its tickets, and devoting the time of its employes to this work, without any compensation therefor.  It is a familiar rule that in construing statutes we must assume that the legislature intended no absurdity nor injustice.  This intent of the legislature is borne out by the language of the act itself.  The third section, which provides the penalty, says:  'Any railroad company * * * who as a common carrier shall sell or issue tickets, * * * and shall refuse or neglect to redeem the same * * * within ten days of the date of demand, shall forfeit,' etc.  This provides merely for the redemption of such tickets as are sold by it as a common carrier.  Tickets sold by a railroad company not for passage, but merely to enable a party to leave his money with the railroad company, and then at a future date have this money paid back to him, would not be tickets sold by the railroad company in its business as a common carrier of passengers.  Such tickets would merely serve the purpose of a certificate of deposit, and would make the railroad company a bank of deposit.  If a railroad company should instruct its agent at a station to receive money

from any one who should wish to leave the same on deposit, and issue to such depositor any form of paper which should be evidence of the amount deposited, and entitle the depositor or his transferee, upon presentation of this paper, to receive his money back, such business would not be that of a common carrier, nor in the line of a common carrier. Such business could in no sense be claimed as coming within the duties of a common carrier. It would not be within the power of the legislature to enact a law compelling railroad companies to become the mere custodians of the money of parties who might wish to deposit with them. And it is elementary that a statute must be so constructed as to bring its enforcement within the powers possessed by the legislature, or it must be held void *in toto.*"

This view has support in, *Parks v. Railway Co.* 13 Lea, 1 (49 Am. Rep. 655). There an act of the legislature required railroad companies "to announce in loud distinct words for each passenger car, the stopping place station, depot or town at which each car or passenger train stops. Upon failure of any railroad company during any trip of the passenger cars to comply strictly with this provision" it should forfeit $100. This was not made dependent on some passenger desiring to get off, or recovery of the penalty limited to persons aggrieved. The plaintiff undertook to accumulate two hundred and forty omissions, and his petition was in that number of counts, and prayed a separate penalty in each. The company insisted that but a single penalty should be allowed, and this the court held, but appears also to have been of the opinion that the plaintiff was not within the provision of the statute. In the course of the opinion the court said: "All the authorities agree that statutes like the one under consideration must be construed strictly. They further agree that a master or principal may be made liable for a reasonable penalty for the act or omission of an employe or agent in

the line of his duty, where the penalty is remedial, not punitive. The inclination of the courts is, therefore, to construe such statutes as remedial; that is, as intended to redress an actual injury, with a view to prevent its recurrence, and not as punitive,—that is, as intended to punish whether the injury has accrued or not.  *  *  *  The intent of the legislature in the statute before us was to secure certain benefits to passengers on the railroad trains. It was, of course, never intended that a penalty should be incurred if in fact there were no passengers on the train, or in a car of the train in which there was a default. And a failure to call a station at which no passenger intended to get off, or did in fact get off, could do no harm, and would be at most only a technical breach of the law. If the statute be construed literally, or as punitive, there would be a penalty even in such cases. Penalties would also be incurred by acts of inadvertence or omissions of negligence, although no person was aggrieved thereby. And, if each default gave a right of action, and might be sued upon at any time, the purpose of the legislature would be lost sight of, and the act be perverted, and made punitive, instead of remedial.  *  *  *  And it is the performance of the duties imposed which inures to the benefit of the passengers on whose behalf the act was passed. A different construction would contravene the legislative intent, leave an opening for the perversion of the act, and make a statute punitive which was intended to be remedial." In a concurring opinion two judges thought the statute "must be so construed as to be confined to its effects upon passengers, or those who propose to be such in good faith, and for the purpose of going from point to point along the line of the particular road as travelers, and not to include such as travel solely for the purpose of speculation or profit to be derived from eavesdropping or playing the parts of spies or detectives; and that, therefore, the party suing must show that he was or intended to be such pas-

senger, and was not traveling for the disreputable purposes indicated, and did not enter the train with a view to them." We have no notion of aiding any one in such an enterprise as plaintiff embarked in. The remedy provided is for those purchasing tickets of passage in good faith and for actual use. Plaintiff was not of this class. His scheme was to pervert a statute enacted for proper purposes into an instrument of revenge, and by its use extort money by way of penalty in the absence of any wrong the lawmakers intended to remedy.

The ruling on the demurrer to the first three counts of the petition is REVERSED; otherwise the judgment will stand AFFIRMED.