a sale as was contemplated by the contract, and for such a disposition the contract makes provision. It is provided that, if unsold goods are transferred to other parties than defendant at the request of Wertheimer & Co., the defendant shall receive $1\frac{1}{2}$ per cent. upon his advances and 1 per cent. on the net market value of the goods. It plainly appears that the plaintiffs were not only willing that the loss should be adjusted by the taking over by the insurance companies of the whole stock of goods, but preferred that method of adjustment, and their expressed desire in that regard may well be considered as equivalent to a request that the goods be transferred to the companies. We consider that the intent of the contract will be carried out if the defendant be held to be entitled to retain the percentages provided for in case the goods remaining unsold be transferred at the request of plaintiffs to other parties than defendant.

As to the fees paid to the adjusters, we think that the case was rightly decided by the referee. The judgment in the action brought by the adjusters against defendant, and of which plaintiffs undertook the defense, did not, perhaps, determine as between these parties that the amount which defendant agreed to pay the adjusters was reasonable; but, even if that question was left open, there is nothing which requires us to hold that it was unreasonable. It was right and proper to engage the services of a skilled adjuster, and while the evidence shows that there was no fixed rule for the compensation of adjusters, and that other persons than those employed by defendant would have done the work more cheaply, it is not shown that defendant was guilty of negligence or of bad faith in employing the adjuster whom he did employ, or in agreeing with him as to the rate of compensation. We find nothing else in the case requiring discussion or criticism.

The judgment should therefore be so modified as to restate the account between the parties, by allowing to the defendant commissions upon the amount received from the insurance companies at the rate provided for in the contract in case unsold goods shall be transferred at the request of plaintiffs to parties other than purchasers in the regular course of trade, with the appropriate adjustment of interest, and, as so modified, should be affirmed, without costs. All concur.

---

(118 App. Div. 858)

### NICHOLSON v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

CARRIERS—PENALTIES—REFUSAL TO GIVE TRANSFER — PASSENGER IN GOOD FAITH.

> The penalty for refusal to give a transfer to "any passenger desiring to make one continuous trip" between any two points on a street railroad system imposed by Laws 1892, p. 1406, c. 676, amending Laws 1890, p. 1114, c. 565, § 105, cannot be recovered by one who demanded a transfer with the sole object of recovering for refusal.

Appeal from Appellate Term.

Action by Theresa Nicholson against the New York City Railway Company. From a judgment of the Appellate Term, affirming a judgment of the Municipal Court for plaintiff, defendant appeals. Reversed, and a new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, SCOTT, HOUGHTON, and LAMBERT, JJ.

James L. Quackenbush, for appellant.
E. V. R. Ketchum, for respondent.

McLAUGHLIN, J. This action was brought in the Municipal Court of the City of New York to recover a penalty of $50 for the defendant's refusal to furnish the plaintiff a transfer between different lines of its street surface railroads in the city of New York, in alleged violation of section 105 of the railroad law (chapter 565, p. 1114, Laws 1890, as amended by chapter 676, p. 1406, Laws 1892). Upon the trial, at the close of plaintiff's case, the defendant moved that the complaint be ·dismissed upon the ground, among others, that the plaintiff, at the time the transfer was refused, was not a passenger in good faith seeking to be transferred to a connecting line of defendant's road; that, on the contrary, the fact was uncontradicted that her sole purpose in asking for a transfer was to bring an action to recover the penalty in case of its refusal. The motion was denied, and the defendant, after offering in evidence the record in another case tried immediately preceding this one, rested, and renewed the motion to dismiss. The motion was denied, and judgment rendered in favor of the plaintiff for the penalty, together with the costs, from which the defendant appealed to the Appellate Term. There the judgment was affirmed, and by permission the defendant appeals to this court.

I am of the opinion that the determination of the Appellate Term and the judgment of the Municipal Court should be reversed, and a new trial ordered. The section of the statute above referred to, and which is relied upon as a justification for the maintenance of this action, reads as follows:

"Every such corporation entering into such contract, shall carry or permit any other party thereto to carry, between any two points on the railroads or portions thereof embraced in such contract, any passenger desiring to make one continuous trip between such points for one single fare, not higher than the fare lawfully chargeable by either of such corporations for an adult passenger. Every such corporation shall, upon demand and without extra charge, give to each passenger paying one single fare, a transfer entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract, to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad, with a single rate of fare. For every refusal to comply with the requirements of this section, the corporation so refusing shall forfeit fifty dollars to the aggrieved party. The provisions of this section shall only apply to railroads wholly within the limits of any one incorporated city or village."

The purpose of this statute is set forth in it. It is to promote the public convenience, and, that this may be accomplished, it directs that the railroads embraced in any contract referred to therein shall be operated substantially as a single road, with a single rate of fare. The "public convenience" has reference, manifestly, to passengers traveling in good faith. This is apparent from the statute itself, because it commands that the railroad shall carry for a single fare between any two points on its road "any passenger desiring to make one con--

tinuous trip between such points." The plaintiff, therefore, in order to maintain the action, had to prove that she became a passenger in the first instance in good faith, and for the purpose of going to some point on the line to which she wished to be transferred. She not only failed to prove this fact, but her counsel frankly conceded at the trial, as he did upon the oral argument of the appeal in this court, that her sole purpose in becoming a passenger was to bring an action for the penalty provided in the statute. Obviously, under such circumstances, the action cannot be maintained.

It will be noticed that only a passenger who has been "aggrieved" can maintain an action to recover the penalty. The plaintiff was not "aggrieved." Indeed, she would have been dissappointed, had she received the transfer demanded, because in that event the purpose of her taking the car would have been frustrated. The object of the statute, as already indicated, is to promote the public convenience. It is not to put money in an individual's pocket, unless such individual comes fairly within the provisions of the statute, viz., a passenger in good faith who has been aggrieved by the railroad company's refusal to give a transfer to some point on a connecting line to which he desires to go. Myers v. Brooklyn Heights R. R. Co., 10 App. Div. 335, 41 N. Y. Supp. 798; Southern Pacific Co. v. Robinson, 132 Cal. 408, 64 Pac. 572; Jolley v. Chicago, M. & St. P. Ry. Co., 119 Iowa, 491, 93 N. W. 555.

In Myers v. Brooklyn Heights R. R. Co., supra, the precise question here presented was considered, and a similar conclusion reached. The construction there placed upon the statute was binding upon the Appellate Term, and might well have been followed; but it was not, presumably because the court was of the opinion that it was controlled by Fisher v. N. Y. C. & H. R. R. Co., 46 N. Y. 644. But in the Myers Case the reason why the Fisher Case did not apply to an action brought to recover a penalty under section 105 of the railroad law was pointed out. The statute upon which the Fisher Case rested (chapter 185, p. 432, Laws 1857) is materially different. That act provides that:

"Any railroad company which shall ask and receive a greater rate of fare than that allowed by law shall forfeit fifty dollars, which sum may be recovered, together with the excess so received, by the party paying the same."

Not a word is said in that statute about a passenger, but it is the party paying the excess of fare who may maintain the action. Here the present statute is not only limited to a passenger, but to one who desires to go to some point on the connecting line. The statute, therefore, as it seems to me, by express provision precludes one from suing for a penalty who has no intent to go to a point on the connecting line, but who takes the car merely for the purpose of putting himself in a position to bring an action.

The determination of the Appellate Term and the judgment of the Municipal Court must therefore be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.