HARCOURT BULL, Appellant, v. NEW YORK CITY RAILWAY
COMPANY, Respondent.

1. RAILROADS — MEANING OF SECTION 104 OF RAILROAD LAW PROVID-
ING FOR ISSUANCE OF TRANSFERS BY STREET SURFACE RAILROADS. Sec-
tion 104 of the Railroad Law (L. 1892, ch. 676), providing for the issuance
of transfers by street surface railroads, was passed for the benefit of "a
passenger desiring to make one continuous trip between" certain points,
which means a person who enters on or continues a trip with the real
and actual desire of getting to some place and whose controlling purpose
is interfered with, or defeated, if the railroad company unjustly refuses
to give him a transfer which would enable him to reach the point for
which he has set out and who, therefore, by such refusal is disappointed
and defeated of his aim and an "aggrieved party."

2. SAME — PERSON RIDING ON STREET SURFACE RAILROAD CAR TO
ACQUIRE INFORMATION TO USE IN ACTION FOR PENALTY UNDER STATUTE
IS NOT A PASSENGER WITHIN MEANING THEREOF. A passenger on a street
surface railroad, whose controlling thought and aim when he started out
was to acquire information in regard to the custom of the railroad com-
pany to issue or not issue transfers at a certain point over a certain route,
which information he desired to use in pending litigation, instituted to
recover penalties for failure to issue transfers, is not a passenger within
the contemplation of the purposes of the statute so as to be entitled to
recover the penalty for the violation of the provision relating to transfers,
where, as matter of fact, he acquired the information he desired, and,
by the failure to issue the transfer, he was not defeated in any purpose
which led him to take the company's cars.

3. RAILROADS — WHEN TWO LINES OF STREET SURFACE RAILROAD
CONSTITUTING PART OF A GENERAL SYSTEM DO NOT CONSTITUTE A ROAD
AND CONNECTING BRANCH OR EXTENSION THEREOF WITHIN MEANING OF
SECTION 101 OF RAILROAD LAW. Two lines of street surface railroad,
originally constructed and owned by separate companies, operating differ-
ent lines of cars, and brought into physical relation only by means of a
third intervening line of road, do not, where they have been taken into a
general railroad system, constitute a road and "connecting branch thereof"
or "main line of road and any branch or extension thereof" within the
meaning of section 101 of the Railroad Law, providing that not more than
five cents shall be charged a passenger by a street surface railroad for a
continuous ride from any point on its road to any other point thereon or
of any connecting branch or extension thereof. The terms of the statute
suggest an original or main line which by an offshoot and secondary and
tributary line has been extended or continued, the two constituting a
single continuous and connected line of road. They do not naturally sug-
gest two originally distinct and separate lines of road not constructed with

reference to one another or coming into connection with each other, and which have become related to each other simply because they have been taken into a general railroad system. Preceding statutes relating to the same subject collated and discussed.

*Bull* v. *New York City Ry. Co.*, 121 App. Div. 582, affirmed.

(Argued May 22, 1908; decided June 12, 1908.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 23, 1907, which reversed a judgment in favor of plaintiff entered upon a decision rendered at a Trial Term of the Municipal Court of the city of New York.

The action was brought to recover a penalty on the theory that defendant had violated both the statute regulating the fare to be charged by a surface street railroad (§ 101 of the Railroad Law) and the statute requiring such road to give transfers (§ 104, Railroad Law).

The appellant is an attorney at law and prior to the date of the alleged violations had very largely been engaged in bringing similar suits against this respondent and other corporations in the city of New York.

On this occasion theoretically he set out with his companion, also an attorney, to make a trip from the corner of the Bowery and Delancey streets to Fifth street by a course over three different lines of road operated by respondent, and which especially involved the right of a transfer from the so-called Eighth street line to the Avenue C line. He took a car at the starting point first mentioned and paid the fare of himself and his companion and obtained transfers to the Eighth street line, but was then informed by the conductor that he would not be given a transfer from the latter line to Avenue C as above stated. Notwithstanding this he alighted at the corner of Clinton street, and taking an Eighth street car again asked for a transfer to Avenue C, which was refused. Again, notwithstanding this, he alighted at the corner of Stanton street and Avenue A and boarded a car on the Avenue C line and in substance asserted the right to have had a transfer to that line and, therefore, to be carried thereon without payment of fare.

His assertion having been disregarded, and demand having been made for payment of another fare, he paid the same and then alighted and returned to his office.

As he knew by previous experience at Clinton street he could have taken a car which would have given him a transfer to the line on Avenue C.

Appellant's purpose in setting out on this trip was that " of simply traveling over the line to see what would be done." He had been bringing suits for penalties for refusals of transfers similar to that here complained of, and he " rode for the purpose of gaining information." He " had no destination whatever on Fifth Street * * *; was traveling over the line to see what information would be given to passengers desiring transfers."

. The learned Appellate Division, by a divided court, held that under these circumstances he was not such a passenger as was entitled to the benefits of section 104, above referred to, and then certified to this court for answer the following questions:

1. Is plaintiff entitled to a judgment under the provisions of sections 39 and 101 of the Railroad Law?

2. Is plaintiff entitled to a judgment under the provisions of section 104 of the Railroad Law?

*Harcourt Bull*, appellant, in person. The object or motive which actuated the plaintiff at the time he made the trip is immaterial. The plaintiff is entitled to sue without regard to the motive which prompted the trip. If the defendant refuses to the plaintiff the transfer that the law requires, or charges the plaintiff more than the regular rate of fare, every such refusal or overcharge is a legal wrong to the plaintiff, who is thereby aggrieved, and who, within the meaning of the act and by its express terms, is thereupon entitled to sue for the penalty. (*Fisher* v. *N. Y. C. & H. R. R. R. Co.*, 46 N. Y. 644; *St. L. R. Co.* v. *Gill*, 54 Ark. 101; *M. P. R. R. Co.* v. *Smith*, 60 Ark. 221; *Adams* v. *U. R. Co.*, 21 R. I. 134; *Parks* v. *R. Co.*, 13 Lea, 1; *Fitzmartin* v. *N. Y. C. Ry. Co.*, 51 Misc. Rep. 36; *Phelps* v. *Nowlen*, 72 N. Y. 39; *Kiff*

v. *Youmans,* 86 N. Y. 324; *Lough* v. *Outerbridge,* 143
N. Y. 271; *Locker* v. *A. T. Co.,* 121 App. Div. 443.) The
plaintiff in the case at bar brought his action under sections 39
and 101 of the Railroad Law, as well as under section 104 of that
law. Sections 39 and 101 of the Railroad Law are to be con-
strued together, and in section 39 is to be found the penalty to
which a street surface railroad is liable in case it violates the pro-
visions of section 101. (*Stewart* v. *M. St. Ry. Co* 20. Misc. Rep.
605; *Schwartzman* v. *B. H. R. R. Co.,* 50 Misc. Rep. 116;
*Tullis* v. *B. H. R. R. Co.,* 71 App. Div. 494; *Senior* v.
*N. Y. C. Ry. Co.,* 111 App. Div. 39; *Baron.* v. *N. Y. C.
Ry. Co.,* 120 App. Div. 134.) If this action be considered as
brought under section 104 of the Railroad Law, the judg-
ment in favor of the plaintiff in the Municipal Court should
still be affirmed. (*Fisher* v. *N. Y. C. & H. R. R. R. Co.,* 46
N. Y. 644.) The argument of defendant respondent that
the word "ride," as used in section 101 of the Railroad Law,
means no more than "one unbroken passage in one car" is
unsound. (*O'Connor* v. *B. H. R. R. Co.,* 123 N. Y. 784;
*Muckle* v. *R. Ry. Co.,* 79 Hun, 32; *Garrison* v. *U. Ry. Co.,*
97 Md. 347; *Senior* v. *N. Y. C. Ry. Co.,* 111 App. Div. 39;
*Baron* v. *N. Y. C. Ry. Co.,* 120 App. Div. 134; *Fitzmartin*
v. *N. Y. C. Ry. Co.,* 51 Misc. Rep. 36; *Schwartzman* v.
*B. H. R. R. Co.,* 50 Misc. Rep. 116.)

*James L. Quackenbush, Henry J. Smith* and *Henry F.
Gannon* for respondent. The plaintiff was not a passenger
desiring to make one continuous trip between any two points
on the railroads and was not aggrieved by the refusal to
transfer. (*Myers* v. *B. H. R. R. Co.,* 10 App. Div. 335;
*S. P. Co.* v. *Robinson,* 132 Cal. 408; *Parks* v. *Ry. Co.,* 13
Lea, 1; *Jolley* v. *C., M. & St. P. Co.,* 119 Iowa, 492; *N. &
W. R. R. Co.* v. *Irvine,* 85 Va. 217; *Griffin* v. *I. S. Ry. Co.,*
179 N. Y. 438; *Nicholson* v. *N. Y. C. Ry. Co.,* 118 App.
Div. 858; *Matter of S. R. R. Co.,* 91 N. Y. 1; *Corning* v.
*McCullough,* 1 N. Y. 47; *Bryant* v. *Thomson,* 128 N. Y.
426.) Sections 39 and 101 of the Railroad Law have no appli-

cation to the facts contained in this case. (*O'Connor* v. *B. H. R. R. Co.*, 123 App. Div. 784; *Baron* v. *N. Y. C. Ry. Co.*, 120 App. Div. 134; *Goodspeed* v. *I. S. Ry. Co.*, 184 N. Y. 353; *Moneypenny* v. *S. A. R. R. Co.*, 7 Robt. 328; *Hunt* v. *B. H. R. R. Co.*, 115 App. Div. 673.) The defendant did not violate sections 39, 101 or 104 of the Railroad Law, because it provided the plaintiff a way to make his trip for one fare had he availed himself of it by taking, upon the same route, the Avenue A car which did re-transfer to the Avenue C car. (*Roach* v. *B. H. R. R. Co.*, 119 App. Div. 520; *Weinstein* v. *I. S. R. R. Co.*, 86 N. Y. Supp. 731.) Section 39 of the Railroad Law is a remedial statute and, to come within its terms, a plaintiff must have suffered some damage. (*Goodspeed* v. *I. S. Ry. Co.*, 184 N. Y. 353; *Dishaw* v. *Wadleigh*, 44 N. Y. Supp. 307.)

HISCOCK, J.   We shall answer the questions above certified to us in the inverse order of their statement.

The respondent was operating the lines of road on which appellant sought to ride, and many other lines under leases and contracts authorized by statutory provisions now incorporated in the Railroad Law (L. 1892, ch. 676) and, therefore, the following provisions of section 104 of said statute were applicable: " Every such corporation * * * shall * * * carry between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between such points for one single fare, * * * Every such corporation shall upon demand, and without extra charge, give to each passenger paying one single fare a transfer, entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract, to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare. For every refusal to comply with the requirements of this section the corporation so refusing shall forfeit fifty dollars to the aggrieved party."

In the cases of *Myers* v. *Brooklyn Heights R. R. Co.* (10 App. Div. 335) and *Nicholson* v. *N. Y. City Railway Co.* (118 App. Div. 858), decided respectively by the Second and First Appellate Divisions, it was held in effect that a person traveling over a street railroad simply for the purpose of being denied a transfer in order that he might bring a suit for a penalty under the statute quoted does not come within the protection and benefits thereof and cannot recover such penalty.

We agree with the results reached in those cases and reinforced as they are by what was written in the cases of *Southern Pacific Co.* v. *Robinson* (132 Cal. 408) and *Jolley* v. *Chicago, Mil. & St. Paul Ry. Co.* (119 Iowa, 491), we might very well content ourselves with basing the affirmance of the judgment now appealed from upon the authority of those cases so far as this question is concerned, were it not for the fact that the appellant claims that his case may and should be distinguished from those of *Myers* and *Nicholson*.

The tangible and practical result of the refusal to appellant of the transfer complained of seems to be as in those former cases a suit for a penalty. But he doubtless is entitled to have his purposes and mental operations on the occasion in question measured by the evidence by which he has chosen to define them. According to this he desired to ride over certain lines of respondent's road for the purpose of ascertaining whether at a given point a transfer would be issued to him enabling him to ride over a certain route in the direction of the point which he had proposed to himself as the termination of his journey, and this information he was seeking in order that as attorney he might conduct various suits for penalties for refusals to issue transfers at the point he was investigating. It is at once apparent that the margin between this case and the former ones cited is at best very narrow. There the plaintiff had ridden for the purpose of laying the foundation for a suit to be commenced in his behalf for the penalty. In this case the appellant has ridden for the purpose of acquiring information as attorney, and which was to be utilized for the

benefit of suits already commenced in behalf of his clients for penalties. If we assume, however, that there is a narrow margin, the question is whether it is sufficient to place this case within the provisions and benefits of the statute when the other ones lay outside thereof.

. The statute which we have quoted was passed for the benefit of a " passenger desiring to make one continuous trip between " certain points for one single fare, and it requires that the corporation shall " give to each passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point," etc. It was passed " to the end that the public convenience may be promoted by the operation of the railroads   *   *   *   substantially as a single railroad with a single rate of fare," and it gives a right of action to one who has been " aggrieved."

Whether we contemplate this statute from the standpoint of a passenger as a remedial one or from the standpoint of the railroad as one for penalties, a reasonable construction of it seems to make some things manifest. It was passed in the interest of public convenience, which we suppose to mean in the interest of the general traveling public. It was passed in the interest of a passenger " desiring to make a continuous trip" between certain points, and we believe that this means a person who enters on or continues a trip with the real and actual desire of getting to some place and whose controlling purpose is interfered with or defeated if the railroad company unjustly refuses to give him a transfer which would enable him to reach the point for which he has set out and who, therefore, by such refusal is disappointed and defeated of his aim and an " aggrieved party."

We do not believe that the appellant comes within the contemplation of the statutory purposes thus outlined. His controlling thought and aim when he started out was to acquire information in regard to the custom of respondent to issue or not issue transfers at a certain point over a certain route, and which information he desired for use in litigation. If he fixed in his mind a definite point of destination it was simply

because he conceived it might be necessary for him to travel to that point in order to acquire the information.   As a matter of fact he acquired the information which he desired at every separate stage of his journey from begining to end, and he as well might have stopped at the end of the first stage as to have continued to the last one, except that he apparently desired to accumulate evidence as well as information and also to lay the foundation for a claim for illegal conduct against the respondent on the second theory involved in this case.   As soon as he had completed this purpose he alighted from the car and returned to his office.

By the failure to issue the transfer he was not defeated in any purpose which led him to take the respondent's cars for he had accomplished all that he had desired or intended to. He was not aggrieved because the respondent by a refusal to issue the transfer had prevented him from consummating some plan which it was bound to assist him in consummating by issuing the transfer.

It is, however, urged by the appellant and was written in the dissenting opinion below that we ought not to construe the statute before us as we have done because this court in the case of *Fisher* v. *N. Y. C. & H. R. R. R. Co.* (46 N. Y. 644) has decided that which forbids such construction. We do not regard such decision as so holding.   In that case, as is well known, the court had before it for consideration chapter 185 of the Laws of 1857, providing " any railroad company which shall ask and receive a greater rate of fare than that allowed by law, shall forfeit fifty dollars, which sum may be recovered, together with the excess so received, by the party paying the same," and it was held by a bare majority of the court that a recovery could be had by a party who rode and paid the excessive fare simply for the purpose of obtaining the penalty, the court saying: " The forfeiture is imposed upon the company for its act, and this entirely irrespective of the object or motive of the passenger in traveling."

We accept this decision and the reasoning which led to it.

The penalty or "forfeiture" as it was called was regarded as a punishment inflicted on the railroad for its wrongful act and any "party" was made a proper agent for inflicting the punishment.

As we have already indicated, we do not regard the language used in the statute now before us in meaning, purpose or effect as at all similar to or the equivalent of the language which was used in the statute of 1857, and thus interpreted.

It is stated in substance in the dissenting opinion below that no distinction is to be drawn between the two statutes narrowing the right to sue under the later one simply because the earlier one in conferring a right of action uses the word "party" while the other one employs the word "passenger;" that the "party" authorized by the earlier statute to bring an action would necessarily be a "passenger" and that, therefore, such word "passenger" employed in the later statute is not any more restrictive or limited in its meaning than the word "party." Neither statute is well construed by reference to a single word. We may concede that the "party" mentioned in the statute involved in the *Fisher* case was in a certain sense a passenger, but, as we have pointed out, section 104 requires that the successful plaintiff shall be more than a passenger simply in the sense of paying a fare and traveling over a railroad. If we have read the language aright, it contemplates and requires a passenger or traveler of a certain character, one who actually desires to reach some point of destination for a purpose only accomplished by reaching that point, or who desires to be carried for some recognized purpose even though nothing more than recreation, and whose desire is defeated rather than consummated by the refusal to give him the necessary transfer. Neither do we agree, as stated in the dissenting opinion below, that "in the present case 'the forfeiture is imposed upon the company for its act' of refusing a transfer, and charging another fare, 'and this entirely irrespective of the object or motive of the passenger in travelling.'" In the *Fisher* case, as we have pointed out, it was stated that "the forfeiture is imposed upon the company for its act and it is entirely irre-

24

spective of the object or motive of the passenger in travel-ing." Under the present statute whatever may be said of the intent to punish the corporation, that punishment can only be inflicted at the instance of a passenger who has been "aggrieved" through being prevented from accomplishing that which the statute attempted to make secure.

We pass to the consideration of the other question sub-mitted to us, whether appellant is entitled to a judgment under the provisions of sections 39 and 101 of the Railroad Law.

Section 101, so far as it is material, provides as follows : "No corporation constructing and operating a railroad under the provisions of this article, or of chapter two hundred and fifty-two of the laws of eighteen hundred and eighty-four, shall charge any passenger more than five cents for one con-tinuous ride from any point on its road, or on any road, line or branch operated by it, or under its control, to any other point thereof, or any connecting branch thereof, within the limits of any incorporated city   *   *   *.   Not more than one fare shall be charged within the limits of any such city   *   *   * for passage over the main line of road and any branch or extension thereof if the right to construct such branch or exten-sion shall have been acquired under the provisions of such chapter or of this article."

This section by its own terms provides no penalty for vio-lation thereof, and for the right to recover a penalty resort must be had to the provisions of section 39. We shall assume for the purposes of this case, without deciding it, that section 39 does apply to and supplement section 101.

The line on Avenue C, on which appellant claimed the right to ride without payment of additional fare, does not directly and of itself connect with the line in Delancey street on which he first took passage and paid his original fare, but one must reach the former line from the latter one by passage over a third line. It also sufficiently appears that these lines originally were owned or controlled respectively by different companies and were independent of and distinct

from one another, and finally, under various leases and con-
tracts, were assembled with very many other lines into a gen-
eral railroad system controlled and operated by the respond-
ent which was originally incorporated and organized for the
purpose of operating an entirely distinct and insignificant
line of road.

We shall assume, without discussion, that under the pro-
visions of the statute quoted appellant would have been
entitled to ride for a single fare over the entire length of any
one of the three lines. That, however, does not meet his
needs in this litigation. He is compelled to claim and ask us
to hold that the Delancey street line and the Avenue C line
were respectively a road owned, operated or controlled
by the respondent and a " connecting branch thereof," or a
" main line of road and a (any) branch or extension thereof."
That is, the narrow question is whether the Avenue C line
can be regarded as a connecting branch or extension of the
Delancey street line or *vice versa.* We do not think that it
can be.

We agree with the learned counsel for the appellant that
his right to recover in this litigation is not to be decided by
the sole fact that he did or did not attempt to take his ride in
a single car, and whatever was said or intimated in *O'Connor*
v. *Brooklyn Heights Railroad Co.* (123 App. Div. 784)
appearing to limit on that ground the right of the litigant to
recover is, we think, too narrow. But it does seem to us that
it would be extravagant and unreasonable to hold that the two
lines of road mentioned, originally constructed and owned by
separate companies and operating different lines of cars and
brought into physical relation on the route selected by appel-
lant only by means of a third intervening line of road, con-
stituted a road and " connecting branch thereof" or " main
line of road and any branch or extension thereof." These
terms suggest an original or main line which by an off-shoot
and secondary and tributary line has been extended or con-
tinued, the two constituting a single continuous and connected
line of road. They do not naturally suggest two originally

distinct and separate lines of road not constructed with reference to one another or coming into connection with each other, and which have become related to each other simply because they have been taken into a general railroad system. A practical test of appellant's theory would be presented by the question whether the road which he took on Delancey street and another road in the extreme upper part of New York, originally entirely distinct in construction and operation and separated by many miles, could be regarded as road and connecting branch simply because at some time by separate leases they were incorporated into a single system and one could be reached from the other by traveling over many different intervening lines.

The construction which we adopt as in accordance with what we regard as the ordinary meaning of terms is, we think, fortified by section 90 of the Railroad Law which deals with and gives a pretty definite idea of what the legislature intended when it spoke of roads and branches and extensions thereof.

Our construction of this statute adverse to the appellant's contention is, we think, also supported and sanctioned by another consideration of much importance.

In construing a statute we have a right to consider conditions existing when it was adopted, and which it must be assumed the legislature intended to meet, and also other statutes relating to the same subject.

Section 101 is, in effect, a re-enactment of statutory provisions originally found in section 13, chapter 252 of the Laws of 1884. Under the provisions of that act surface street railroad companies enjoyed what, in practical effect, was only a limited right to make contracts to run upon and use the railroad tracks of one another, and it is doubtful whether any right would have existed enabling the Delancey street and Avenue C lines to make a contract or lease one with another because parallel lines. We think it cannot be claimed that the legislature then could have contemplated the existence of any such extensive and complicated street surface railroad system as was afterwards created in the city of New York, or

that it then intended to deal in the matter of fares with all
of the constituent lines incorporated into such a system, but
that it had in mind, as the statute expressed, the ordinary
case of a road and direct and actually connecting branches
and extensions.

Subsequently chapter 305 of the Laws of 1885 was passed,
which in effect re-enacted some of the provisions of earlier
statutes and added others, and which expressly secured to
different surface railroad companies the right to make leases
and contracts of and with one another, and under which pro-
visions, continued and amended from time to time, it became
possible and practical to gather together an extensive system
of former independent railroad lines like that now operated
by the defendant. When this condition presented itself, the
legislature recognized the necessity for broader safeguards
securing to the traveling public the right of travel over various
lines in a single system for a single fare, and, therefore, by
the same statute last referred to, adopted provisions requiring
the company operating the different roads, for a single fare,
to give a transfer entitling the person receiving it to a con-
tinuous trip over the different roads gathered together under a
contract and lease as therein provided, and which provisions
have now been carried into section 104.

The question at once arises, and we think cannot be satis-
factorily answered in accordance with appellant's theory, what
was the object in adopting these provisions of 1885, requiring
transfers over different roads of a system, if the prior pro-
visions of 1884, providing for a single fare over a road and
its extension or connecting branch already covered roads
which did not actually connect, but were parts of a general
system?

We do not think that any of the cases especially relied on by
the appellant to sustain a conclusion different from that
reached by us fairly do so.

*Muckle* v. *Rochester Railway Co.* (79 Hun, 32) was an
action of assault for unlawfully ejecting the plaintiff from one
of defendant's cars, and all of the questions therein arose in

connection with a transfer which the defendant had issued. The court did say : " The payment by the plaintiff of a single fare of five cents entitled him to one continuous passage from any one to any other point of the railroad operated by the defendant.   (Laws 1890, chap. 565, sec. 101.) "

We are not able to determine just what this statement under any circumstances might mean as applied to the railroad operated by the defendant, but the question of the right of the plaintiff to ride for a single fare where he was going does not appear to have been at all disputed or considered.   The defendant assumed this and based its defense entirely on other considerations.

In the case of *Senior* v. *N. Y. City Railway Company* (111 App. Div. 39), subsequently affirmed by this court (187 N. Y. 559), the controversy and discussion proceeded on quite different lines from those involved here.

In *Baron* v. *N. Y. City Railway Co.* (120 App. Div. 134) no three of the learned judges, as we read the different opinions, united in passing upon the question here involved in the manner desired by the appellant.   The actual question involved in that case grew out of facts quite different from those presented here.

In conclusion, we think that each of the questions certified to us should be answered in the negative, and that the order appealed from should be affirmed and judgment absolute entered against the appellant, on his stipulation, with costs in all courts.

GRAY, HAIGHT, VANN, WERNER and CHASE, JJ., concur; CULLEN, Ch. J., not sitting.

Ordered accordingly.