concerned. It should not be issued to aid a blackmailer, nor withheld simply because the interest of the stockholder is small, but the court should proceed cautiously and discreetly, according to the facts of the particular case."

See, also, Latimer v. Herzog Teleseme Co., 75 App. Div. 522, 78 N. Y. Supp. 314, to the same effect.

It will be seen by this assuming that the same reasoning should properly be applied for the examination of the books of a joint-stock association that a prerequisite therefor is the refusal of the officers in charge to permit this examination. Here there had not been a refusal. There had not been even a reasonable time permitted for the corporation to act upon the request of the petitioners. Much correspondence had been had by these petitioners, or some of them. Many circulars had been sent out by them to the various shareholders, in which the motives and conduct of the officers of the express company were assailed severely, and the prior examination and the various negotiations and correspondence had been conducted with considerable friction between the parties hereto, so that under all the circumstances it was right and proper, in my opinion, for the treasurer of this company to lay before his board of directors this communication from these petitioners, asking for an examination of these books, and a reasonable time should have been accorded them to either grant or refuse this application of the petitioners which was not done. The writ of mandamus should not issue in a case of this kind unless the right of the petitioner thereto is clear assuming the affidavit submitted in response to said application to be true. I hold that the petitioners have not satisfied the burden thus imposed upon them by showing either a proper purpose or a refusal.

The application that a peremptory writ of mandamus issue to the petitioners is therefore denied, with costs to the express company.

---

## O'CONNOR v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. January 24, 1908.)

1. CARRIERS—TRANSPORTATION OF PASSENGERS—FARES—STREET RAILROADS—REGULATION—PENALTY.

Railroad Law, Laws 1890, p. 1096, c. 565, § 39, providing that any railroad which shall ask or receive more than the lawful rate of fare, unless by inadvertence or mistake not amounting to gross negligence, shall forfeit $50 to the party aggrieved, etc., has no application to the refusal of a street railroad company to give a transfer to a connecting line, as required by section 104 (page 1114), but is limited to the exaction of more than the lawful rate of fare.

2. SAME—TRANSFERS.

Railroad Law, Laws 1890, p. 1114, c. 565, § 104, provides that any street surface railroad corporation which acquires the use and operation of the roads of other companies by contract shall carry between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one "continuous trip" between any such points for a single fare, and, on demand and without extra fare, shall give to each passenger paying one single fare a transfer entitling the passenger to one "continuous trip" to any point or portion of any railroad embraced in such contract, and for refusal imposes a penalty of $50. Held, that such section does not cover different lines constructed by the same com-

pany, but relates only to "a continuous trip" made by changes from the line of one of such companies to that of another; both lines being operated by one company under a lease or other contract.

**3. SAME—OFFENSE—PENALTIES.**

The gist of the offense for which a penalty is prescribed by such section is the refusal of a transfer in response to a proper demand therefor.

**4. SAME—CONTINUOUS RIDE.**

Railroad Law, Laws 1890, p. 1113, c. 565, § 101, cl. 1, provides that no corporation constructing and operating a street surface railroad under such act or under Laws 1884, p. 309, c. 252, shall charge any passenger more than five cents for "one continuous ride" from any point on its road or on any road, line, or branch operated by it or under its control to any other point thereof or any connecting branch thereof, within the limits of any incorporated city or village. Held, that such section did not provide for a change of cars, but only entitled the passenger to a "continuous ride," as distinguished from "continuous trip," for five cents from any point on the road of the carrying company or a road operated or controlled by it under a lease or other contract to the extent of the distance that the car which received the passenger ran or could run over the connecting roads.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, p. 1512.]

**5. SAME.**

Railroad Law, Laws 1890, p. 1113, c. 565, § 101, cl. 2, provides that not more than one fare shall be charged by a street surface railroad within the limits of any city or village in which it is operated for passage over the main line of road and any branch or extension thereof, if the right to construct such branch or extension shall have been acquired under the provisions of the chapter or article. Held that, under such section, the car receiving a passenger on a main line of road is required to carry him over a branch or extension line, and vice versa, without the payment of another fare; or, if no cars continue from the main line over the branch or extension, or vice versa, then the passenger must be sent to the connecting car at the point of continuation or connection of the main line and branch line and carried forward without payment of another fare, but that such provision had no relation to lines crossing each other at right angles, unless the carrier operated them as lessee or under some contract so as to bring them within the regulations prescribed by section 104 (page 1114).

**6. SAME—PLEADING.**

In an action by a passenger of a street surface railroad to recover a penalty for defendant's charge of excessive fare on refusing a transfer to an intersecting line, an allegation that defendant operates "its" two lines, etc., over which plaintiff traveled, was not a sufficient allegation that defendant was the lessee of the road to which plaintiff desired to transfer.

**7. SAME—COMPLAINT—THEORY OF TRIAL.**

Where, in an action by a passenger to recover a penalty for a carrier's charge of excessive fare by refusal of a transfer to an intersecting line, the complaint alleged that the two lines were operated by defendant under Railroad Law, Laws 1890, p. 1113, c. 565, § 101, and that plaintiff was entitled to the penalty prescribed by section 39 (page 1096), but both parties tried the case on the theory of a refusal of a transfer on plaintiff's demand and of defendant's concession that it was under obligation to issue the transfer, defendant's sole contention being that it was entitled to judgment because the transfer was refused by mistake not amounting to gross negligence, which constituted a defense as provided by section 104 (page 1114), the complaint would be construed, in accordance with the course of the trial, as praying for a penalty under section 104 as "in accordance with the statute in such case made and provided," instead of under section 39.

Appeal from Municipal Court, Borough of Brooklyn, Third District.

Action by James O'Connor against the Brooklyn Heights Railroad Company. From judgment for plaintiff, defendant appeals. Affirmed.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

A. M. Williams, for appellant.

John R. Farrar, for respondent.

GAYNOR, J. The complaint alleges that the defendant operates "its" electric street railroad in the Borough of Brooklyn called the Greenpoint line, which runs through several streets, including Kent and Classon avenues, and "its" other called the Flushing and Graham avenue line, which runs through several streets, including Flushing avenue; that the said railroads cross each other on the said Flushing and Classon avenues, two streets which cross at right angles. It then alleges that the plaintiff became a passenger on the first mentioned line and paid his fare of 5 cents; that he demanded a transfer ticket to enable him to change to the said second mentioned line at the said point of crossing, and was refused; that he changed to a car of the said latter·line at the said crossing, and another fare of 5 cents was exacted of him, which he paid. The evidence conforms to the complaint, but there is no evidence as to whether the defendant constructed and owns the said roads, or only operates them as lessee or under some contract. The complaint alleges that the said two lines are operated under section 101 of the Railroad Law, Laws 1890, p. 1113, c. 565, and that the defendant incurred the penalty of $50 prescribed by section 39 of the railroad law. As section 101 relates to both roads constructed and owned by the operating company, and roads only controlled and' operated by it by lease or other contract, this allegation does not inform us whether the roads in question are owned by the defendant, or only operated by it by lease or other contract. And section 39 provides such penalty against any railroad corporation "which shall ask or receive more than the lawful rate of fare, unless such overcharge was made through inadvertence or mistake not amounting to gross negligence." It was taken into the codification of the railroad laws from chapter 185, p. 432, Laws 1857, as amended by chapter 415, p. 660, Laws 1886.

The complaint is therefore confusing. It alleges a refusal to give a transfer, but claims a penalty under section 39. That section provides no penalty for a refusal to give a transfer, but only for asking or receiving more than the lawful rate of fare. Only section 104 of the railroad law requires the giving of transfers, and it prescribes a penalty of $50 for refusing to do so. Section 39 has nothing to do with a violation of the requirements of section 104.

And when we read section 104 we find that the plaintiff's case is not within it by the complaint, unless we can eke out of the scant words of the complaint an allegation that the defendant controls and operates the two crossing roads in question by lease or other contract; and not by the evidence, for there is none on that head. That section relates only to a street surface railroad company which operates the

street surface railroad lines of other companies which it has acquired by lease or other contract, i. e., formerly under chapter 305, p. 525, Laws 1885, and now under section 78 of the railroad law. It does not cover the case of different lines constructed by the same company. It provides that any street surface railroad corporation which acquires the use and operation of the roads of other companies by contract shall carry "between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between any such points for one single fare," and "shall, upon demand, and without extra charge, give to each passenger paying one single fare a transfer, entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract." For every refusal to comply with the said requirements the said section prescribes a penalty of $50.

This section relates only to "a continuous trip" which is made by changes from the line of one of such companies to the line of another. It requires that passengers be carried in such continuous trip by changes of cars from the road of one of such companies to that of another, and that for that purpose transfers be given. The penalty prescribed is for the combined refusal to carry the passenger on his continuous trip and to give him a transfer ticket to enable him to be so carried. The refusal of the transfer ticket is of the gist of the offense. The offense cannot exist unless a transfer ticket was demanded and refused. The section is complete in itself. It prescribes both the offense and the penalty. Section 39 has no application to such offense.

To see if the plaintiff may recover, we have therefore to discard the fact of the refusal of a transfer to him, as no penalty may be based on that. And to see whether the defendant asked or received of him "more than the lawful rate of fare," for which section 39 imposes the penalty, we have to turn to section 101, for there is no other section having to do with the subject; and section 101 prescribes no penalty.

It contains two distinct provisions relating to fares. The first covers the case of a "continuous ride," not of a "continuous trip," as is the case with section 104, as we have seen. It was taken in the codification of the railroad statutes from the street surface railroad act of 1884 (section 13, c. 252, p. 309), and is as follows:

"No corporation constructing and operating a railroad under the provisions of this article, or of chapter 252, p. 309, of the laws of eighteen hundred and eighty four, shall charge any passenger more than five cents for one continuous ride from any point on its road, or on any road, line or branch operated by it, or under its control, to any other point thereof or any connecting branch thereof, within the limits of any incorporated city or village."

This was not intended in the act of 1884 to do more than just what it says, and what was then and thereafter well understood and practiced, viz., establish the fare at five cents for "one continuous ride" from any point on the road of the carrying company, or on any of the roads operated or controlled by it (i. e., by lease or other contract), to any other point on any of said roads. It did not provide for changes of cars, because it only contemplated and provided in terms for a "continuous ride." The act of 1884, being complete in itself, had to provide for the rate of fare, and did so by this provision, the meaning of

which was that the passenger should be carried for five cents over the connected roads as far as the car which received him ran, or could run. And in section 101 this provision is continued with the same meaning.

The second provision of the said section seems to be new with it. It is entirely plain in its object and meaning. It drops the phrase "continuous ride," and provides for a "passage." It does not cover the case of all of the system of roads of the carrying company, whether owned by it, or controlled by it by lease or other contract, as the said first provision does, but only relates in so many words to "the main line of road" built by a company, and "any branch or extension thereof" built by it under the said act of 1884, or under the Railroad Law. It is as follows:

"Not more than one fare shall be charged within the limits of any such city or village, for passage over the main line of road and any branch or extension thereof if the right to construct such branch or extension shall have been acquired under the provision of such chapter or of this article."

Under this provision the car which receives the passenger on the main line of road has to continue to carry him over such branch or extension, and vice versa, without the payment of another fare; or, if no cars continue from the main line of road over such branch or extension, or vice versa, then the passenger has to be sent to "the car ahead," i. e., at the point of continuation or connection of the main line and the branch or extension, and carried without paying another fare.

It is plain that neither of these provisions covers the plaintiff's case, which is not that of a "continuous ride" so far as a car runs, nor of a main line of road carrying passengers over any branch or extension thereof, but is the case of two lines owned by the same company which do not connect, i. e., run into each other, but cross at right angles— unless it can be eked out in some way that the two roads in question are operated by the defendant as lessee or under some other contract, which would bring the case under section 104.

The cases heretofore decided by us have not been overlooked (Snee v. Brooklyn Heights R. Co., 120 App. Div. 570, 104 N. Y. Supp. 907; Munro v. Id., 120 App. Div. 516, 105 N. Y. Supp. 325; Tullus v. Id., 71 App. Div. 494, 75 N. Y. Supp. 863) in the foregoing construction and analysis of the said sections, and we desire to express ourselves as not following anything heretofore said in any case to the effect that section 104 and section 39 are to go or be construed together.

But it may be that the plaintiff's case may be brought by us under section 104, in spite of the obstacles he has put in the way. The allegation of the complaint that the defendant operates "its" said two roads could not be taken as an allegation that it is the lessee thereof, it is true. When we look to the course of the trial, however, we find that it proceeded on the basis of the refusal of the transfer ticket on the plaintiff's demand therefor, and of the defendant's concession that it was under obligation to issue it. This theory of the issue being tried is maintained to the end, for at the close of the evidence the defendant moves for judgment in its favor on the sole ground "that it appears that this transfer was refused by mistake not amounting to gross neg-

ligence," and that "there has been no violation of section 101 or section 39 of the Railroad Law:" This was meaningless, unless the case was being tried for a refusal to carry the plaintiff on a continuous trip and give him a transfer ticket therefor under section 104. The complaint may therefore be interpreted in accordance with the course of the trial as praying for a penalty of $50 "in accordance with the statute in such case made and provided," instead of under section 39.

The judgment may be affirmed.

**Judgment of the Municipal Court affirmed, with costs. All concur.**