MANNION v. INTERNATIONAL RY. CO.

(Supreme Court, Special Term, Erie County.   February 14, 1910.)

1. CARRIERS (§ 12*)—STREET CAR PASSENGERS—SINGLE FARES—RIGHT TO TRANS-
FERS—"CONTINUOUS" ROUTE.

General Railroad Law, § 104 (Laws 1890, c. 565, as amended by Laws
1892, c. 676), provides for a single fare in case of a continuous trip by any
passenger between any two points on railroads or portions thereof, and
for a transfer entitling each passenger to a continuous trip to any point
or portion of any railroad embraced in the contract with him, substan-
tially as a single railroad with a single rate of fare, and for a penalty for
noncompliance.   *Held*, that where a temporary break occurred in the
street car line during the construction of a subway under railroad tracks,
requiring passengers to walk some 1,200 feet to get a connecting car, their
route over such line was not "continuous" within such section, and a pas-
senger who could be carried by connecting lines in two ways, the one
across the break being slightly shorter and more direct, was entitled to a
"continuous" trip by car from his starting point to his destination, and
the street railroad company could not insist that he take the shorter route,
and any rule refusing the right to travel by means of transfers over the
longer but continuous route, and compelling him to take the shorter route
to avoid a double fare, was unreasonable under the existing conditions,
though it would become reasonable when he is again given a continuous
passage by the shorter route through the subway.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 12.*

For other definitions, see Words and Phrases, vol. 2, pp. 1510–1512.]

2. CARRIERS (§ 20*)—VIOLATION OF REGULATIONS—ACTION FOR PENALTY—QUES-
TIONS FOR JURY.

Whether a rule as to transfers on street railroads, pursuant to Gen-
eral Railroad Law, § 104 (Laws 1890, c. 565, as amended by Laws 1892, c.
676), relating thereto, is reasonable, is a question of law for the court, and
not for the jury, in an action for a penalty for its violation.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

3. CARRIERS (§ 20*)—REGULATIONS—TRANSFERS ON STREET RAILROADS—RIGHT
TO PENALTY.

Right to recover a penalty for refusal to issue a transfer under General
Railroad Law, § 104 (Laws 1890, c. 565, as amended by Laws 1892, c. 676),
does not apply to every railroad, but is confined to such street railway cor-
porations as are mentioned in section 78 (as amended by Laws 1905, c.
695, § 1) relating to railways connecting with another company for the use
of their respective roads or routes or any parts thereof, and section 104
does not apply where different lines are constructed and operated by the
same company.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

4. EVIDENCE (§ 22*)—JUDICIAL NOTICE—OPERATION OF STREET RAILWAYS.

The court may have hearsay knowledge as to whether connecting lines
are operated by the same street railway company or by different com-
panies, but it cannot take judicial notice thereof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 26–28; Dec. Dig.
§ 22.*]

5. CARRIERS (§ 20*)—REGULATION—ACTION FOR PENALTY—EVIDENCE.

Evidence *held* insufficient to show the relation of three street railroad
companies so as to make out a case for a penalty under General Railroad
Law, § 104 (Laws 1890, c. 565, as amended by Laws 1892, c. 676), for re-
fusal of a transfer.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. CARRIERS (§ 20*)—STREET CAR PASSENGERS—REFUSAL OF TRANSFER—RIGHT TO SUE FOR DAMAGES OR PENALTY.**

    If a street car passenger is unlawfully refused a transfer, a right of action for damages might exist, but not for a penalty where the facts of the case are not brought within a statute providing therefor.

    [Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

Appeal from Municipal Court of Buffalo.

Action by Thomas J. Mannion against the International Railway Company for a penalty for violation of General Railroad Law, § 104 (Laws 1890, c. 565, as amended by Laws 1892, c. 676). From a judgment for plaintiff, defendant appeals. Reversed.

R. R. Mitchell, for appellant.
John T. Ryan, for respondent.

WHEELER, J. The plaintiff boarded one of the defendant's street cars going north on Main street in the city of Buffalo. He purposed going to his home on Briggs avenue, near the northerly line of the city.

It was possible for him to go north on Main street to Hertel avenue, and there transfer onto a line going westerly on Hertel avenue, and thereby connect again with a car line operated on Niagara street, and thus reach his home. Instead of taking this route, it was also possible for the plaintiff to have gone to Shelton Square, at the junction of Main and Niagara streets, and thence out Niagara street to his destination. It appears, however, that a subway was in process of construction under railroad tracks at or near the International bridge, which necessitated persons traveling on Niagara street cars to alight and travel a distance of about 1,200 feet through the viaduct, until they could reach a car at the other end of the viaduct. The street railway company had issued instructions to its conductors to issue no transfers to passengers boarding cars on Main street south of High street for the Hertel avenue and Niagara street line, but to require such passengers to return to Shelton Square and take a Niagara street car from there. The plaintiff boarded the defendant's car at or near Huron street, and demanded a transfer for Niagara street via Hertel avenue. The conductor refused to grant it. The plaintiff went on, paying a second fare on taking the car at the junction of Main street and Hertel avenue, and now sues to recover the penalty of $50, given by section 104 of the General Railroad Law (Laws 1890, c. 565, as amended by Laws 1892, c. 676), for a refusal to give a transfer. The jury in the court below awarded him a verdict.

It is contended by the defendant that from the point at the junction of Main and Huron streets to the plaintiff's home on Briggs avenue, the nearest and most direct street car route, is from Huron street to Shelton Square, and thence by Niagara street to the point of destination. This is undoubtedly true. But it was not a continuous route for the reasons stated later.

It is also contended that the rule withholding transfers to passengers starting from Huron street via Main street, Hertel avenue, and Niagara street was and is a reasonable rule, and the street railway com-

pany was within its rights in refusing the transfer demanded.  If there had been no break in the street car line on Niagara street requiring passengers to walk some 1,200 feet to get a connecting car, the proposition would in our judgment be perfectly correct.  We do not think, however, in view of the break in. the line, the rule was a reasonable one.  We think the plaintiff was entitled to a "continuous" trip by car from the starting point to the destination, and that the defendant had no right (where a continuous route existed and was possible) to insist that a passenger should take a slightly shorter route over a line which necessitated a walk of some 1,200 feet.  Under such circumstances, any rule which refused the right to passengers to travel by the longer but continuous route was unreasonable.

It is argued with no little force that the rule was reasonable, but that the temporary break in the line during the construction of the viaduct simply created exceptional conditions which could not interfere with the application of the rule, and the appellant cites Montgomery v. Buffalo R. Co., 165 N. Y. 139, 58 N. E. 770, where a passenger was ejected from a car for violation of a rule forbidding standing on the platform, and it was insisted it was unreasonable to enforce the rule under the circumstances of that case because the passenger was nauseated at the time.  Judge Gray, commenting on the contention, said:

"The appellant, however, insists that, even if this rule was a reasonable regulation of the company, all rules, even if reasonable, 'must have their exceptions,' and whether it was reasonable to enforce the rule upon this occasion was a question to be passed upon by a jury.  In other words, it is claimed that the right of enforcement may depend upon the particular circumstances, and, as the plaintiff had an excuse for noncompliance in the present case, its reasonableness, or that of the conductor's conduct, became a question for the determination of the jury.  I am unable to assent to the proposition.  I think that, if the rule was a reasonable one, the passenger was bound to submit to it, and that it was the duty of the conductor to enforce it.  Therefore, in ejecting him from the car upon his refusal to submit, the conductor was acting lawfully in the discharge of his duty.  The passenger by his conduct had forfeited his right to be carried any further."

But we think this case is clearly distinguishable from the case of Montgomery v. Buffalo R. Co.  In the case now under consideration the rule was unreasonable under existing conditions, not only as to the plaintiff, but as to every other passenger boarding the defendant's cars on Main street between Shelton Square and High street.  The plaintiff's case was not the exception.  When conditions changed so that the defendant could give a continuous passage, the rule in question would become reasonable; but, so long as a continuous passage remained impossible, the rule remained unreasonable.  The viaduct in question had been in process of construction from November to April, when the alleged refusal to issue a transfer occurred.  The condition existing at the viaduct was not the creation of the plaintiff, or in any way attributable to him.  Whether the rule is reasonable became and was a question of law for the court to decide, and was not one for the jury.  Hanley v. Brooklyn Heights R. Co., 110 App. Div. 429, 96 N. Y. Supp. 249; Montgomery v. Buffalo R. Co., 165 N. Y. 139, 58 N. E. 770; Monnier v. N. Y. C. R. Co., 175 N. Y. 281, 67 N. E. 569, 62 L. R. A. 357, 96 Am. St. Rep. 619; Avery v. N. Y. C. R. Co., 121 N. Y. 31, 24 N. E. 20.

The trial court in its charge to the jury left the reasonableness of the rule practically for the jury to decide.; but, as the jury by its verdict took inferentially the same view as this court entertains, perhaps the judgment should not be reversed for that reason. The case, however, was submitted to the jury in our opinion with a confused view as to the province of the court and of the jury in the premises.

The more serious question presented for our consideration is, conceding the rule to have been unreasonable, whether any case has been made out for a recovery of a penalty under the provisions of section 104 of the general railroad law. It is well established that the right to recover a penalty for a refusal to issue a transfer under section 104 does not apply to every railroad, but is confined to "such" street railway corporations as are referred to in section 78 of the act, as amended by Laws 1905, c. 695, § 1. Griffin v. Interurban St. R. Co., 179 N. Y. 438, 72 N. E. 513; O'Reilly v. Brooklyn H. R. Co., 179 N. Y. 450, 72 N. E. 517; Bull v. N. Y. City R. Co., 192 N. Y. 361, 85 N. E. 385, 19 L. R. A. (N. S.) 778; O'Connor v. Brooklyn H. R. Co., 123 App. Div. 784, 108 N. Y. Supp. 471; Baron v. N. Y. City R. Co., 120 App. Div. 134, 105 N. Y. Supp. 258; King v. Nausau Electric R. Co., 128 App. Div. 130, 112 N. Y. Supp. 589. Section 78 relates to railways contracting with another company for the use of their respective roads or routes or any parts thereof. It is held that section 104 does not apply to street railways where different lines are constructed and operated by the same company. O'Connor v. Brooklyn Heights R. Co., 123 App. Div. 784, 108 N. Y. Supp. 471.

The complaint in this action does not appear to have been framed to meet the requirements of law as laid down in these decided cases. There is no allegation whatever that the route to Briggs avenue over which the plaintiff demanded a transfer ran over any but the defendant's own line. If anything can be inferred from the complaint, it is that the entire route was owned and operated by the defendant. Nothing appeared to the contrary in the answer. The trial seems to have proceeded on the theory outlined in the complaint. The only thing in the evidence tending to the contrary seems to be a map apparently showing that the International Railway Company used lines of the Crosstown Street Railway. The line running on Hertel avenue is designated by a red line, which indicates a Crosstown Railway Line. The defendant put in evidence the so-called Milburn agreement between the city of Buffalo, the Buffalo Railway Company, the West Side Railway Company, and the Crosstown Street Railway Company of Buffalo, found in the published proceedings of the common council of the city of Buffalo for the year 1897, beginning at page 1840, by which it appears that the railroad companies mentioned were operating at that time certain lines of railroad in the city of Buffalo, and which agreement gave to each company the right to operate over the tracks of the other. But the defendant here is the International Railway Company, and the record is barren of the relation that company sustains to any of the other companies, or whether or not it has succeeded to the rights of any or all of the companies mentioned in this agreement. This court may have hearsay knowledge of the facts, but cannot take judicial notice of them.

The evidence stops with the evidence pointed out, and there is no further testimony showing the relation of the two companies. It is asserted by the respondent that it is undisputed that these lines are two different and distinct lines. Such may be the fact, but we think the technical proof is lacking to justify a recovery for a penalty under section 104. Something more than a map is needed to make out a case. Particularly is this true in view of the allegations of the complaint. The defendant was not called on by answer or by proof to negative the plaintiff's own allegations contained in the complaint. The defendant may have violated the provisions of the Milburn agreement, but no penalty is created by the Milburn agreement. If a transfer was unlawfully refused, a right of action for damages might exist, but not one for a penalty.

These views necessitate a reversal of the judgment.

Judgment reversed, and a new trial ordered in the City Court.