THOMAS J. MANNION, Respondent, *v.* THE INTERNATIONAL
RAILWAY COMPANY, Appellant.

(Supreme Court, Erie Special Term, February, 1910.)

Carriers — Statutory penalties enforcible against carrier — Liability to
     penalty for refusing transfer ticket: Obligation to transfer: Pro-
     cedure — Burden of proof.

> Where the most direct route by which a street railway pas-
> senger can reach his destination requires him, in consequence of a
> subway in process of construction, to alight and walk 1,200 feet
> through a viaduct to reach another car, the company cannot rea-
> sonably refuse to give him a transfer by another less direct route
> which would afford him continuous passage to his destination.
>
> In an action for a penalty under section 104 of the Railroad
> Law the plaintiff is bound to show the relation between the de-
> fendant and the line to which the right of transfer was claimed.

APPEAL from a judgment of the Municipal Court of
Buffalo, entered upon the verdict of a jury in favor of the
plaintiff, for a penalty for an alleged violation of section 104
of the Railroad Law, in refusing to issue a " transfer " to
the plaintiff.

R. R. Mitchell, for appellant.

John T. Ryan, for respondent.

WHEELER, J.   The plaintiff boarded one of the defend-
ant's street cars going north on Main street in the city of
Buffalo.   He purposed going to his home on Briggs avenue,
near the northerly line of the city.

It was possible for him to go north on Main street to
Hertel avenue, and there transfer onto a line going westerly
on Hertel avenue, and thereby connect again with a car
line operated on Niagara street, and thus reach his home.
Instead of taking this route, it was also possible for the
plaintiff to have gone to Shelton square, at the junction of
Main and Niagara streets, and thence out Niagara street

to his destination. It appears, however, that a subway was in process of construction under railroad tracks at or near the international bridge, which necessitated persons traveling on Niagara street cars to alight and travel a distance of about 1,200 feet through the viaduct, until they could reach a car at the other end of the viaduct.

The street railway company had issued instructions to its conductors to issue no transfers to passengers boarding cars on Main street south of High street for the Hertel avenue and Niagara street line, but to require such passengers to return to Shelton square and take a Niagara street car from there. The plaintiff boarded the defendant's car at or near Huron street, and demanded a transfer for Niagara street via Hertel avenue. The conductor refused to grant it. The plaintiff went on, paying a second fare on taking the car at the junction of Main street and Hertel avenue, and now sues to recover the penalty of $50, given by section 104 of the General Railroad Law, for a refusal to give a transfer. The jury in the court below awarded him a verdict.

It is contended by the defendant that, from the point at the junction of Main and Huron streets to the plaintiff's home on Briggs avenue, the nearest and most direct street car route is from Huron street to Shelton square, and thence by Niagara street to the point of destination.

This is undoubtedly true. But it was not a continuous route for the reasons stated later.

It is also contended that the rule withholding transfers to passengers starting from Huron street via Main street, Hertel avenue and Niagara street, was and is a reasonable rule, and the street railway company was within its rights in refusing the transfer demanded.

If there had been no break in the street car line on Niagara street requiring passengers to walk some 1,200 feet to get a connecting car, the proposition would, in our judgment, be perfectly correct. We do not think, however, in view of the break in the line, the rule was a reasonable one. We think the plaintiff was entitled to a " continuous " trip by car from the starting point to the destination; and that

Supreme Court, February, 1910.          [Vol. 66.

the defendant had no right (where a continuous route existed and was possible) to insist that a passenger should take a slightly shorter route, over a line which necessitated a walk of some 1,200 feet. Under such circumstances, any rule which refused the right to passengers to travel by the longer but continuous route was unreasonable.

It is argued with no little force that the rule was reasonable, but that the temporary break in the line during the construction of the viaduct simply created exceptional conditions which could not interfere with the application of the rule; and the appellant cites Montgomery v. Buffalo R. Co., 165 N. Y. 139, where a passenger was ejected from a car for violation of a rule forbidding standing on the platform, and it was insisted it was unreasonable to enforce the rule under the circumstances of that case because the passenger was nauseated at the time. Judge Gray, commenting on the contention, said: " The appellant, however, insists that, even if this rule was a reasonable regulation of the company, all rules, even if reasonable, ' must have their exceptions,' and whether it was reasonable to enforce the rule upon this occasion, was a question to be passed upon by a jury. In other words, it is claimed that the right of enforcement may depend upon the particular circumstances and, as the plaintiff had an excuse for non-compliance, in the present case, its reasonableness, or that of the conductor's conduct, became a question for the determination of the jury. I am unable to assent to the proposition. I think that, if the rule was a reasonable one, the passenger was bound to submit to it and that it was the duty of the conductor to enforce it. Therefore, in ejecting him from the car upon his refusal to submit, the conductor was acting lawfully in the discharge of his duty. The passenger, by his conduct, had forfeited his right to be carried any farther."

But we think this case is clearly distinguishable from the case of Montgomery v. Buffalo R. Co.

In the case now under consideration, the rule was unreasonable under existing conditions, not only as to the plaintiff, but as to every other passenger boarding the de-

fendant's cars on Main street between Shelton square and High street. The plaintiff's case was not the exception.

When conditions changed so that the defendant could get a *continuous* passage, the rule in question would become reasonable; but, so long as a continuous passage remained impossible, the rule remained unreasonable.

The viaduct in question had been in process of construction from November to April when the alleged refusal to issue a transfer occurred. The condition existing at the viaduct was not the creation of the plaintiff, or in any way attributable to him.

Whether the rule is reasonable became and was a question of law for the court to decide, and was not one for the jury. Hanley v. Brooklyn Heights R. Co., 110 App. Div. 429; Montgomery v. Buffalo R. Co., 165 N. Y. 139; Monnier v. N. Y. C. & H. R. R. R. Co., 175 id. 281; Avery v. N. Y. C. & H. R. R. R. Co., 121 id. 31.

The trial court, in its charge to the jury, left the reasonableness of the rule practically for the jury to decide; but, as the jury by its verdict took inferentially the same view as this court entertains, perhaps the judgment should not be reversed for that reason.

The case, however, was submitted to the jury, in our opinion, with a confused view as to the province of the court and of the jury in the premises.

The more serious question presented for our consideration is, conceding the rule to have been unreasonable, whether any case has been made out for a recovery of a penalty under the provisions of section 104 of the General Railroad Law.

It is well established that the right to recover a penalty for a refusal to issue a transfer under section 104 does not apply to every railroad, but is confined to "*such*" street railway corporations as are referred to in section 78 of the act. Griffin v. Interurban St. R. Co., 179 N. Y. 438; O'Reilly v. Brooklyn H. R. Co., 179 id. 450; Bull v. N. Y. City R. Co., 192 id. 361; O'Connor v. Brooklyn H. R. Co., 123 App. Div. 784; Baron v. N. Y. City R. Co., 120 id. 134; King v. Nassau Electric R. Co., 128 id. 130.

Section 78 relates to railways contracting with another company for the use of their respective roads or routes or any parts thereof.

It is held that section 104 does not apply to street railways where different lines are constructed and operated by the same company. O'Connor v. Brooklyn Heights R. Co., 123 App. Div. 784. The complaint in this action does not appear to have been framed to meet the requirements of law as laid down in these decided cases. There is no allegation whatever that the route to Briggs avenue over which the plaintiff demanded a transfer ran over any but the defendant's own line. If anything can be inferred from the complaint, it is that the entire route was owned and operated by the defendant. Nothing appeared to the contrary in the answer. The trial seems to have proceeded on the theory outlined in the complaint. The only thing in the evidence tending to the contrary seems to be a map apparently showing that the International Railway Company used lines of the Crosstown Street Railway. The line running on Hertel avenue is designated by a red line, which indicates a Crosstown Railway Line. The defendant put in evidence the so-called Milburn agreement between the city of Buffalo, the Buffalo Railway Company, the West Side Railway Company, and the Crosstown Street Railway Company of Buffalo, found in the published proceedings of the common council of the city of Buffalo for the year 1897, beginning at page 1840, by which it appears that the railroad companies mentioned were operating at that time certain lines of railroad in the city of Buffalo, and which agreement gave to each company the right to operate over the tracks of the other. But the defendant here is the International Railway Company and the record is barren of the relation that company sustains to any of the other companies, or whether or not it has succeeded to the rights of any or all of the companies mentioned in this agreement. This court may have hearsay knowledge of the facts, but cannot take judicial notice of them.

The evidence stops with the evidence pointed out, and

there is no further testimony showing the relation of the two companies. It is asserted by the respondent that it is undisputed that these lines are two different and distinct lines. Such may be the fact, but we think the technical proof is lacking to justify a recovery for a penalty under section 104. Something more than a map is needed to make out a case. Particularly is this true in view of the allegations of the complaint. The defendant was not called on by answer or by proof to negative the plaintiff's own allegations contained in the complaint.

The defendant may have violated the provisions of the Milburn agreement, but no penalty is created by the Milburn agreement. If a transfer was unlawfully refused, a right of action for damages might exist, but not one for a penalty.

These views necessitate a reversal of the judgment.

Judgment reversed, and new trial ordered.