LOWENSTEIN v. INTERNATIONAL RY. CO.

(Supreme Court, Special Term, Erie County. January 10, 1912.)

1. CARRIERS (§ 20*)—TRANSFERS—PENALTIES—PLEADING.

A complaint, in an action for the penalty provided for on refusal of a transfer from one to another of leased surface railroads, by Railroad Law (Laws 1890, c. 565) § 105, alleging that defendant and another street railway corporation entered into a contract under section 78, whereby defendant operated its cars on the line of the other corporation, stated a cause of action entitling the plaintiff to prove an agreement between such companies, even though it alleged elsewhere in the complaint another and different agreement between the city and the two companies mentioned.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

2. CARRIERS (§ 20*)—TRANSFERS—RECOVERY OF PENALTY.

The penalty provided for on refusal of a transfer from one leased street railroad to another, provided for by Railroad Law, § 105, is allowable only in case of a contract of lease made under section 78 of the railroad law, and an agreement whereby a city gave its consent to the leasing of several lines does not give any right of action, though it contained a provision calling for a continuous trip over all the lines for a single fare.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

Action by Henry Lowenstein against the International Railway Company. On demurrer. Demurrer overruled.

Hamilton Ward, for plaintiff.
Preston M. Albro, for defendant.

WOODWARD, J. [1] This is an action for a penalty under the provisions of section 49, subd. 7, of the public service commissions law (Consol. Laws 1910, c. 48), formerly section 105 of the railroad law (Laws 1890, c. 565), and the defendant has demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The complaint alleges that the defendant is a domestic corporation, operating a street railroad in the city of Buffalo; that the Crosstown Street Railway Company of Buffalo is a domestic corporation, and has a franchise to run a street railway upon certain streets in the city of Buffalo; and "that a contract exists between the Crosstown Street Railway Company of Buffalo, as aforesaid, and the International Railway Company, as aforesaid, by the terms of which the said International Railway Company operates the lines aforesaid, and which said tracks belong to the Crosstown Street Railway Company of Buffalo, and that the employés of the said International Railway Company operate the cars over such line, and that no authority exists in law, other than that conferred by section 78 of the railroad law, permitting the International Railway Company to operate over the said lines owned by the Crosstown Street Railway Company of Buffalo, and that no franchise had ever been granted to the International Railway Company to operate over Hertel avenue in that portion of Main street, as aforesaid." So far there would seem to be a good statement that there was an existing contract between the Crosstown

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Street Railway Company of Buffalo and the International Railway Company, and that such contract existed by virtue of the provisions of section 78 of the railroad law, though this might not be a necessary allegation, for, the authority being given to contract under the provisions of section 78 of the railroad law, an allegation that a contract now exists would permit of the introduction of a contract made under the provisions of that section.

The complaint then alleges that:

"The International Railway Company is the successor in interest of the Buffalo Railway Company and the West Side Railway Company, and that such railroad companies, together with the Crosstown Street Railway Company of Buffalo, heretofore, and before the commencement of this action, entered into an agreement in writing with the city of Buffalo, which is known as the 'Milburn Agreement,' under the terms of which the said companies agreed to convey a passenger in the city of Buffalo over the lines of any or all of the said companies on a continuous trip, by the most direct route between any two points in such city, for a single fare of five cents; that such contract was thereafter ratified by the Legislature of the state of New York, and is now, and at all times hereinafter mentioned has been, in full force and effect."

Just what the purpose of this allegation is, unless to allege the amount of fare legally to be charged within the city of Buffalo, does not occur to me. The contract between the city of Buffalo, as party of the first part, and the Buffalo Railway Company, the West Side Street Railway Company, and the Crosstown Street Railway Company as party of the second part (this contract being under seal), has nothing to do with a contract existing between the International Railway Company and the Crosstown Railroad Company, so far as this particular litigation is concerned. However, it does not operate to take anything away from the allegations of the complaint, and it may serve the purpose of alleging that the lawful fare upon these railroads is limited to five cents.

The complaint then alleges a state of facts which, if there is an existing contract between the defendant and the Crosstown Street Railway Company, as contemplated by section 78 of the railroad law, would entitle the plaintiff to recover a penalty of $50 for a failure on the part of the defendant to deliver a transfer which entitled the plaintiff to a continuous passage to the point of destination on his paying the legal fare.

I am of the opinion that the complaint does state facts sufficient to constitute a cause of action; that the reference to the so-called Milburn Agreement does not limit the allegations elsewhere contained in the complaint, and which are sufficient to entitle the plaintiff on the trial to establish that there is an existing contract between the defendant and the Crosstown Street Railway Company under the provisions of section 78 of the railroad law.

[2] Of course, if there is no such contract, the so-called Milburn Agreement cannot operate to give a cause of action. The penalty provided by section 105 of the railroad law is a penalty provided for corporations contracting under the provisions of section 78 of the railroad law (Griffin v. Interurban St. Ry. Co., 179 N. Y. 438, 44 72 N. E. 513), and it is very doubtful whether the so-called Milb..

Agreement operated to authorize any contract, as between the several companies constituting the party of the second part, other or different from that provided for by section 78 of the railroad law. The Milburn Agreement provided for releasing some of the corporations from contracts to pay to the city of Buffalo a portion of their gross receipts, and to bring about an agreement to dispense with the transfer charges which these several corporations had exacted from the people of that city, and incidentally there was an agreement that "the said companies shall have the right from and after the seventh day of January, 1892, to run their cars on each other's lines interchangeably," and this provision was an attempted concession of franchise rights to the contracting corporations, which it was necessary that the Legislature ratify before it could become binding. The Milburn Agreement was, in so far as it affects this question, merely a consent on the part of the city of Buffalo that the several railroad corporations might by contract between themselves arrange for running their cars interchangeably upon the lines of each other, but there is nothing in this agreement which in any manner operated as a contract between the International Railway Company and the Crosstown Street Railway Company which would give the plaintiff a right of action for penalties prescribed under the old railroad law. He is entitled under his pleadings to show the existence of a contract under the provisions of section 78, and for this reason the demurrer is not good.

The demurrer should be overruled, with costs, and the defendant should be permitted to answer within 20 days, on payment of costs.