CATALANO v. CROSSTOWN ST. RY. CO.

(Supreme Court, Special Term, Erie County.   August, 1912.)

1. CARRIERS (§ 5*)—TRANSFERS—PENALTIES.
     The penalty imposed by Public Service Commissions Law (Consol. Laws 1910, c. 48) § 49, for the refusal of any street surface railroad to give a transfer for a continuous trip, is a penalty provided for corporations contracting under Railroad Law (Laws 1905, c. 695) § 78, authorizing railroad corporations to contract with each other for the use of their respective roads.
     [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 3, 4, 7;  Dec. Dig. § 5.*]

2. CARRIERS (§ 5*)—TRANSFERS—PENALTIES.
     An agreement between the city of Buffalo and street railway companies operating surface railroads under franchises, which binds the companies to abolish transfer charges, and which requires them to charge a uniform fare for a continuous trip by the most direct route from any point on any of the street railroads owned by the companies to any other point thereon, is at most a contract by which each company agrees to honor the transfers of the others without charge, and is not a contract for the use of their respective roads or routes, within Railroad Law (Laws 1905, c. 695) § 78, providing that any railroad corporation may contract with any other railroad corporation for the use of their respective roads or routes, or any part thereof, and a company refusing to give a transfer is not liable to the penalty imposed by Public Service Commissions Law (Consol. Laws 1910, c. 48) § 49.
     [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 3, 4, 7;  Dec. Dig. § 5.*]

3. STATUTES (§ 241*)—CONSTRUCTION—PENAL STATUTES.
     A statute imposing a penalty must be strictly construed, and the penalty cannot be recovered, unless plaintiff, suing therefor, brings himself squarely within the statute.
     [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322, 323;  Dec. Dig. § 241.*]

Appeal from City Court of Buffalo.

Action by Philip Catalano against the Crosstown Street Railway Company.  From a judgment of the City Court of Buffalo for plaintiff, defendant appeals.  Reversed, and new trial ordered.

Preston M. Albro, for appellant.

F. S. Jackson, for respondent.

WHEELER, J.  The action was begun in the City Court of Buffalo to recover a penalty of $50 for a failure of the defendant to deliver to the plaintiff a transfer.  The complaint alleges that the defendant operates a street railroad along Hertel avenue in the city of Buffalo; that the International Railway Company is the lawful successor of the Buffalo Street Railway Company, and of the West Side Street Railway Company, and as such successor engaged in operating a street railroad in Niagara street in said city; and that said line of the defendant and of the International Railway Company intersect. The complaint then set up the so-called Milburn agreement, entered into in 1892, between the city of Buffalo, the Buffalo Railway Com-

pany, the West Side Street Railway Company, and the Crosstown Street Railway Company, which will be hereafter more particularly referred to.

The plaintiff contends that by virtue of this agreement, which was offered in evidence, the defendant was obligated to furnish to the plaintiff a valid transfer, which would entitle him to ride to his destination over the Niagara Street line of the International Railway Company, and that, having refused to give him such a transfer on the occasion complained of, the defendant subjected itself to a penalty of $50 under the provisions of section 104 of the Railroad Law. As matter of fact, section 104 of the Railroad Law, at the time of the commencement of this action, had been incorporated, in a somewhat modified form, into the Public Service Commissions Law, under subdivision 7 of section 49 of that act.

It is contended, therefore, that no recovery can be had, because the complaint does not specify the proper statute. We are, however, disposed to disregard this objection, and to examine the case for the purpose of ascertaining whether a case was made out in the court below for a recovery under any statute whatever. The section of the Public Service Commissions Law referred to reads as follows:

"Until and except as the Public Service Commission shall otherwise prescribe as to any street railroad corporation, or corporations, pursuant to the provisions of this chapter, every street surface railroad corporation entering into a contract with another such corporation, as provided in section 78 of the Railroad Law, shall carry or permit any other party thereto to carry between any two points on the railroads, or portions thereof embraced in such contract, any passenger desiring to make one continuous trip between such points for one single fare not higher than the fare lawfully chargeable by either such corporations for an adult passenger. Every such corporation shall, upon demand and without extra charge, give to such passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract to the end that public convenience may be promoted by the operation of the railroads embraced in such contract, substantially as a single fare railroad with a single rate or fare. For every refusal to comply with the requirements of this subdivision the corporation so refusing shall forfeit $50.00 to the aggrieved party."

### Section 78 of the Railroad Law (Laws 1905, c. 695) provides:

"Any railroad corporation, or any corporation owning or operating any railroad or railroad route within this state may contract with any other such corporation for the use of their respective roads or routes, or any part thereof, and thereafter use the same in such manner and for such time as may be prescribed in such contract. Such contract may provide for the exchange or guarantee of the stock and bonds of either of such corporations by the other and shall be executed by the contracting corporations under the corporate seal of each corporation, and if such contract shall be a lease of any such road and for a longer period than one year such contract shall not be binding unless approved by the votes of stockholders owning at least two-thirds of the stock of each corporation which is represented and voted upon in person or by proxy at an annual meeting of the stockholders for the purposes of electing directors, called in the manner prescribed by law, providing that the notice of such meeting shall state that one of the purposes thereof will be the approval of such lease, or at a meeting called separately for that purpose upon a notice stating the meeting," etc.

[1] It has been held that the penalty imposed by section 104 of the Railroad Law was a penalty provided for corporations contracting under the provisions of section 78 of the Railroad Law. Griffin v. Interurban St. Ry. Co., 179 N. Y. 438, 72 N. E. 513; Lowenstein v. International Ry. Co., 75 Misc. Rep. 357, 132 N. Y. Supp. 653; O'Connor v. Brooklyn H. R. Co., 123 App. Div. 784, 108 N. Y. Supp. 471; Mannion v. International Ry. Co., 66 Misc. Rep. 420, 121 N. Y. Supp. 263. And the same holding applies with equal force to the present sections of the Public Service Commissions Law above quoted.

[2] As the only evidence offered in this case to support a right of recovery for the penalty demanded is the so-called Milburn agreement, above referred to, we are at once called on to examine that agreement for the purpose of ascertaining whether it is such a contract as comes within the terms of section 78 of the Railroad Law. If it is, then the plaintiff is entitled to recover, and the judgment must stand. If not, then the plaintiff must fail, for the Milburn agreement, in and of itself, provides for no penalty. While it provides for the giving of transfers over the lines of the contracting parties, it provides for no penalty for a failure so to do, and without the express provision of the statute imposing a penalty, although the party refused a proper transfer might have a right of action for damages, he would have no right to recover a penalty, which is quite a different thing. Mannion v. International Ry. Co., 66 Misc. Rep. 420, 121 N. Y. Supp. 263.

The actual damages sustained by a refusal may be merely nominal, but the penalty sought to be recovered is $50. Does the Milburn agreement, therefore, fall within the class of contracts referred to in section 78 of the Railroad Law? It provides that:

"Any railroad corporation owning or operating any railroad or railroad route within this state may contract with any other such corporation *for the use of the same in such manner and for such time as may be prescribed in such contract.*"

The Milburn agreement was one between the city of Buffalo, the defendant, and two other street railroads, of which the International Railway Company is the successor. It recites that under prior franchises granted by the city of Buffalo, under which they were obligated to pay the city a certain percentage of their receipts, and do other things not necessary to enumerate, these companies had been accustomed to charge persons carried on their cars an extra fare for the privilege of transferring from one line to another, and that the interest of the public would be promoted by a readjustment of the relations between the companies and the city. It was therefore provided that the percentages to be paid the city for the privileges of operating their railroads should be modified; such modification consisting in a reduction in the amount to be paid. The contract further relieved the railroads, or some of them, from the obligation of building certain lines or extensions. The agreement among other things recites:

. "And whereas, the Buffalo Company and the Crosstown Company are different companies and operate their respective railroads independently, so

that every passenger whose journey takes him over the lines of both companies has to pay the regular fare to each, and the same state of affairs exists between the West Side Company and the Crosstown Company, and to a limited extent between the West Side Company and the Buffalo Company."

In consideration of the agreements and modifications above set forth, the contracting street railway companies agreed with the city and with each other as follows:

"Third—The said companies covenant and agree that they will abolish all transfer charges from and after the 7th day of January, 1892, and that thereafter they will charge a uniform fare of five cents for a continuous trip by the most direct route from any point on any of the street railroads owned and operated by said companies to any other point thereon, irrespective of whether the railroads traveled over between such points are owned by the same company or different companies, and to that end the said companies shall have the right from and after the 7th day of January, 1892, to run their cars on each other's lines interchangeably. A continuous trip is not to be construed as including a return trip or round trip. The intention of the parties is that all transfer charges and double fares on continuous trips as so defined shall be abolished, to the end that there may be a uniform five-cent fare for a continuous trip to any point by the most direct route over any portion of the entire railroad system owned by the three companies."

This contract was ratified by an act of the Legislature of the state of New York, and became binding upon all parties to it. Can this arrangement be deemed in any proper sense a lease or agreement "for the use of their respective roads or routes, or any part thereof"? The section is headed "Lease of Road," and in its entire scope and provisions seems to contemplate a contract for the leasing and operation of one road, or a part thereof, by another road. Certainly all that the agreement, so far as the matter of transfers is concerned, provides for, is that each contracting railroad will carry passengers transferred to it to their destinations without further charge than the fare paid the initial carrier. There is no provision in the agreement by which one road is to share in the fares collected by the first carrier. Probably it was thought that the mutual exchanges would counterbalance the expense to each railroad. In no sense does this agreement provide for any control by one railroad of the other. Each operates its own lines, supplies its own cars, motormen, and conductors, and remains in absolute management of its own lines. At most, it appears to be a contract by which each line agrees to honor the transfers of the other without charge, in consideration of the concessions made by the city of Buffalo, and primarily, at least, for the benefit of the citizens of the city. This cannot, in our opinion, be said to be a contract *"for the use of their respective roads or routes"* within the meaning of the act. There is no evidence in this case that the Crosstown Street Railway Company and the International Railway Company in fact operate any of their cars over the lines of the other, or have ever exercised that right.

[3] It must not be forgotten that the action is to recover a penalty—not for compensatory damages—and in all actions of this character the statute is to be strictly construed, and no recovery

can be had unless the plaintiff brings himself fairly and squarely within the provisions of the act. We do not think the plaintiff has done this. The same question was up for consideration before Mr. Justice Woodward, at Special Term, in the case of Lowenstein v. International Ry. Co., 75 Misc. Rep. 357, 132 N. Y. Supp. 653. In that case the question arose on a demurrer to a complaint in an action brought for a penalty. The learned judge dismissed the demurrer, for the reason that he was of the opinion that the complaint stated facts sufficient to constitute a cause of action independent of the so-called Milburn agreement, which was also set up in the complaint. The court said in that case:

"That the reference to the so-called Milburn agreement does not limit the allegations elsewhere contained in the complaint."

But added:

"Of course, if there is no such contract [i. e., contract other than the Milburn agreement], *the so-called Milburn agreement cannot operate to give a cause of action.* * * * The Milburn agreement was, in so far as it affects this question, merely a consent on the part of the city of Buffalo that the several railroad corporations might, by contract between themselves, arrange for running their cars interchangeably upon the lines of each other; but there is nothing in this agreement which in any manner operates as a contract between the International Railway Company and the Crosstown Railway Company which would give the plaintiff a right of action for penalties prescribed by the old Railroad Law."

We think, upon principle and authority, the plaintiff has failed to make out a case for the recovery of the penalty sued for, and the judgment must be reversed. If any recovery can be had against the defendant here, it must be by proof of some other agreement than the Milburn agreement; but none has been pleaded or proved.

Ordered that a new trial be had, costs to abide result.